MATTHEW A. MACDONALD, SBN 255269
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
953 East 3rd Street, Suite 100
Los Angeles, CA  90013-1952
Telephone: (323) 210-2900
Email:       matthew.macdonald@wsgr.com

JORDAN R. JAFFE, SBN 254886
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA  94105-1126
Telephone: (415) 947-2000
Email:       jjaffe@wsgr.com

*Attorneys for Defendants*
*Google LLC and Alphabet Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOEL GAVALAS, as Personal Representative of the ESTATE OF JONATHAN GAVALAS,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC, a Delaware Company, and ALPHABET INC., a Delaware Corporation,<br><br>Defendants. | Case No.: 5:26-cv-1849-EKL-SVK<br><br>**DEFENDANTS' GOOGLE LLC AND ALPHABET INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   August 19, 2026<br>Time:   10:00 a.m.<br>Courtroom:    7, 4th Floor<br><br>Before: Honorable Eumi Kim Lee |

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

INTRODUCTION..................................................................................................................1

BACKGROUND....................................................................................................................3

ARGUMENT .........................................................................................................................5

I.    PLAINTIFF'S CLAIMS FAIL AS A MATTER OF TORT LAW ....................................5

    A.    Plaintiff's Product Liability Claims Fail Because Gemini is Not a Product for Purposes of Plaintiff's Claims ...................................................................5

        1.    Gemini Is Not a "Product" for Purposes of Product Liability Law ............5

        2.    Gemini Is Not Static.................................................................................7

        3.    Plaintiff's Alleged Harm Flows from Content and Ideas, Not Defects in any Tangible Personal Property ...................................................8

    B.    Plaintiff's Wrongful Death and Survival Claims (Counts V and VI) Must Also Be Dismissed ...............................................................................11

    C.    Plaintiff's UCL Claim (Count V) Fails as a Matter of Law.................................13

        1.    Plaintiff Does Not Allege Facts Showing Any Unlawful Act ..................13

        2.    Plaintiff Does Not Allege Unfair Conduct................................................13

        3.    Plaintiff Does Not Adequately Allege Fraud ...........................................14

        4.    Plaintiff's Demand for Injunctive Relief Fails.........................................15

II.    THE FIRST AMENDMENT INDEPENDENTLY BARS ALL OF PLAINTIFF'S CLAIMS ..........................................................................................................................16

    A.    The First Amendment Applies to Tort Claims Based on Speech..........................16

    B.    Plaintiff's Claims Do Not Fall Within an Established Exception to First Amendment Protection..........................................................................................18

    C.    Speech Generated By and Received from an AI Algorithm Does Not Create a "First Amendment Free Zone" .............................................................................20

        1.    Tort Liability for Gemini's Outputs Would Interfere with Users' Rights to Receive Speech and Create Their Own Speech.........................21

        2.    The First Amendment Protects Expressive Choices ...............................24

III.     ALPHABET IS NOT A PROPER DEFENDANT ..............................................................25

CONCLUSION ..................................................................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*303 Creative LLC v. Elenis*,
  600 U.S. 570 (2023) ................................................................................................. 24

*Ahmed v. City of Antioch*,
  2016 WL 8729938 (N.D. Cal. July 1, 2016) ............................................................ 12

*Anderson v. City of Hermosa Beach*,
  621 F.3d 1051 (9th Cir. 2010) ............................................................................ 21, 22

*Baba v. Hewlett-Packard Co.*,
  2011 WL 317650 (N.D. Cal. Jan. 28, 2011) ............................................................ 14

*Bachellar v. Maryland*,
  397 U.S. 564 (1970) ................................................................................................. 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................. 25

*Benitez v. Cnty. of San Diego*,
  2026 WL 252373 (S.D. Cal. Jan. 30, 2026) ............................................................ 11

*Bogard v. TikTok Inc.*,
  2025 WL 604972 (N.D. Cal. Feb. 24, 2025) ...................................................... 11, 25

*Brandenburg v. Ohio*,
  395 U.S. 444 (1969) ................................................................................................. 19

*Brooks v. Eugene Burger Mgmt. Corp.*,
  215 Cal. App. 3d 1611 (1989) .................................................................................... 6

*Brown v. Ent. Merchs. Ass'n*,
  564 U.S. 786 (2011) ............................................................................................ 18, 22

*Citizens United v. Fed. Election Comm'n*,
  558 U.S. 310 (2010) ................................................................................................. 22

*Cohen v. California*,
  403 U.S. 15 (1971) ................................................................................................... 18

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ................................................................................... 15

*Doe 1 v. Meta Platforms, Inc.*,
  2026 WL 1144707 (9th Cir. Apr. 28, 2026) ............................................................ 10

*Doe v. Apple Inc.*,
  2025 WL 1266928 (N.D. Cal. May 1, 2025) ........................................................... 14

*Donorovich-Odonnell v. Harris*,
  241 Cal. App. 4th 1118 (2015) .......................................................................... 13, 20

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) ................................................................................................. 13

*Elias v. Hewlett-Packard Co.*,
903 F. Supp. 2d 843 (N.D. Cal. 2012) ..................................................................................... 13

*Elonis v. United States*,
575 U.S. 723 (2015) ................................................................................................................. 19

*Estate of B.H. v. Netflix, Inc.*,
2022 WL 551701 (N.D. Cal. Jan. 12, 2022), *remanded on other grounds sub
nom.*, *Estate of Herndon v. Netflix, Inc.*, 2025 WL 1417008 (9th Cir. May 13,
2025)..................................................................................................................................... 2, 10

*Estate of Lopez v. Gelhaus*,
149 F. Supp. 3d 1154 (N.D. Cal. 2016) ................................................................................... 12

*Estate of Temple v. Placer Cnty. Sheriff's Office*,
2024 WL 3742920 (E.D. Cal. Aug. 9, 2024) ........................................................................... 12

*Fan v. NBA Props. Inc.*,
2024 WL 3297143 (N.D. Cal. July 2, 2024) .............................................................................. 6

*Fields v. City of Philadelphia*,
862 F.3d 353 (3d Cir. 2017) ..................................................................................................... 22

*Friend v. Gasparino*,
61 F.4th 77 (2d Cir. 2023) ................................................................................................. 18, 21

*Garcia v. Character Technologies, Inc.*,
785 F. Supp. 3d 1157 (M.D. Fla. 2025) ................................................................................... 25

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022) .................................................................................................. 16

*Hess v. Indiana*,
414 U.S. 105 (1973) ................................................................................................................. 19

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) ..................................................................................................................... 18

*Hustler Magazine, Inc. v. Falwell*,
485 U.S. 46 (1988) ................................................................................................................... 17

*In re Social Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
702 F. Supp. 3d 809 (N.D. Cal. 2023) ...........................................................................*passim*

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009)............................................................................................................. 14

*Ingels v. Westwood One Broad. Servs., Inc.*,
129 Cal. App. 4th 1050 (2005)................................................................................................ 13

*Isham v. Padi Worldwide Corp.*,
2007 WL 2460776 (D. Haw. Aug. 23, 2007).............................................................................. 8

*Jackson v. Airbnb, Inc.*,
    639 F. Supp. 3d 994 (C.D. Cal. 2022)................................................................................ 7

*Jacobs v. Meta Platforms, Inc.*,
    2023 WL 2655586 (Cal. Super. Ct. Mar. 10, 2023) (Lee, J.) ............................................. 6, 9

*James v. Meow Media, Inc.*,
    300 F.3d 683 (6th Cir. 2002)........................................................................................*passim*

*Johnson v. United States Steel Corp.*,
    240 Cal. App. 4th 22 (2015)............................................................................................... 6

*Kaplan v. California*,
    413 U.S. 115 (1973) ........................................................................................................ 24

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972) ........................................................................................................ 23

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011)...................................................................................................... 14

*Lamont v. Postmaster Gen. of U.S.*,
    381 U.S. 301 (1965) ........................................................................................................ 23

*Langley v. Guiding Hands Sch., Inc.*,
    2021 WL 1212713 (E.D. Cal. Mar. 31, 2021) ........................................................................ 11

*Lee v. Trump*,
    2026 WL 880161 (D.D.C. Mar. 31, 2026), *appeal docketed*, No. 26-7049 (D.C.
    Cir. Apr. 17, 2026) ........................................................................................................ 19

*Manigault-Johnson v. Google, LLC*,
    2019 WL 3006646 (D.S.C. Mar. 31, 2019)........................................................................... 25

*Mayo v. White*,
    178 Cal. App. 3d 1083 (1986).............................................................................................. 11

*McCollum v. CBS, Inc.*,
    202 Cal. App. 3d 989 (1988)...........................................................................................*passim*

*Milwaukee Elec. Tool Corp. v. Superior Court*,
    15 Cal. App. 4th 547 (1993)............................................................................................... 11

*Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*,
    460 U.S. 575 (1983) ........................................................................................................ 22

*Monschke v. Timber Ridge Assisted Living, LLC*,
    244 Cal. App. 4th 583 (2016).............................................................................................. 12

*Moody v. NetChoice, LLC*,
    603 U.S. 707 (2024) ........................................................................................................ 24

*Murphy v. Twitter, Inc.*,
    60 Cal. App. 5th 12 (2021).................................................................................................. 15

*Pahler v. Slayer*,
2001 WL 1736476 (Cal. Super. Ct. Oct. 29, 2001)................................................................ 17

*Phillips v. Apple Inc.*,
2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ....................................................................... 14

*Police Dep't of the City of Chicago v. Mosley*,
408 U.S. 92 (1972) ................................................................................................................. 24

*Poole v. Healthright 360*,
2025 WL 1883827 (N.D. Cal. July 7, 2025) .................................................................... 11, 12

*Prager Univ. v. Google LLC*,
2018 WL 1471939 (N.D. Cal. Mar. 26, 2018), *aff'd*, 951 F.3d 991 (9th Cir.
2020)........................................................................................................................................ 15

*Prescott v. Rady Children's Hospital - San Diego*,
265 F. Supp. 3d 1090 (S.D. Cal. 2017) ................................................................................. 14

*Project Veritas v. Schmidt*,
125 F.4th 929 (9th Cir. 2025).......................................................................................... 21, 22

*Quinteros v. InnoGames*,
2024 WL 4197826 (W.D. Wash. Sept. 16, 2024), *appeal docketed*, No. 24-6332
(9th Cir. Oct. 17, 2024) ........................................................................................................ 6, 9

*Rhynes v. Stryker Corp.*,
2011 WL 2149095 (N.D. Cal. May 31, 2011) ....................................................................... 16

*Robie v. Trader Joe's Co.*,
2021 WL 2548960 (N.D. Cal. June 14, 2021) ....................................................................... 16

*Rodgers v. Christie*,
795 F. App'x 878 (3d Cir. 2020).............................................................................................. 8

*Sanders v. Acclaim Ent., Inc.*,
188 F. Supp. 2d 1264 (D. Colo. 2002) ............................................................................... 6, 17

*Sandoval ex rel. B.U. v. City of Nat'l City*,
2023 WL 1453157 (S.D. Cal. Feb. 1, 2023) ......................................................................... 12

*Scott v. Thompson*,
184 Cal. App. 4th 1506 (2010)............................................................................................... 11

*Snyder v. Phelps*,
562 U.S. 443 (2011) ............................................................................................................... 17

*Social Media Cases*,
2023 WL 6847378 (Cal. Super. Ct. Oct. 13, 2023)........................................................ 6, 7, 9

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020).................................................................................................. 15

*Stanley v. Georgia*,
394 U.S. 557 (1969) ............................................................................................................... 21

*Thunder Studios, Inc. v. Kazal*,
  13 F.4th 736 (9th Cir. 2021) .................................................................................................. 23

*TikTok Inc. v. Garland*,
  604 U.S. 56 (2025) ................................................................................................................ 22

*Tingley v. Ferguson*,
  57 F.4th 1072 (9th Cir. 2023) ............................................................................................... 18

*Turner Broad. Sys., Inc. v. F.C.C.*,
  512 U.S. 622 (1994) .............................................................................................................. 20

*United States v. Alvarez*,
  567 U.S. 709 (2012) .............................................................................................................. 18

*United States v. Bestfoods*,
  524 U.S. 51 (1998) ................................................................................................................ 25

*United States v. Hansen*,
  599 U.S. 762 (2023) .............................................................................................................. 19

*United States v. Stevens*,
  559 U.S. 460 (2010) .................................................................................................. 17, 18, 21

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976) .............................................................................................................. 23

*W. Virginia State Bd. of Educ. v. Barnette*,
  319 U.S. 624 (1943) .............................................................................................................. 21

*Watters v. TSR, Inc.*,
  715 F. Supp. 819 (W.D. Ky. 1989), *aff'd*, 904 F.2d 378 (6th Cir. 1990) .......................... 17, 24

*Western Watersheds Project v. Michael*,
  869 F.3d 1189 (10th Cir. 2017) ............................................................................................ 22

*Wilson v. Midway Games, Inc.*,
  198 F. Supp. 2d 167 (D. Conn. 2022) ........................................................................ 9, 10, 17

*Winter v. G.P. Putnam's Sons*,
  938 F.2d 1033 (9th Cir. 1991) ....................................................................................... 2, 8, 11

*Zamora v. Columbia Broad. Sys.*,
  480 F. Supp. 199 (S.D. Fla. 1979) .................................................................................. 17, 23

*Ziencik v. Snap, Inc.*,
  2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) .................................................................... 6, 9

**STATUTES**

Cal. Civ. Proc. Code § 377.60(a) ................................................................................................ 11

Cal. Pen. Code § 401(a) ....................................................................................................... 13, 20

Fla. Stat. § 782.08 (2025) ........................................................................................................... 20

**OTHER AUTHORITIES**

Eugene Volokh, Mark A. Lemley, Peter Henderson, *Freedom of Speech and Ai Output*,
3 J. Free Speech L. 651 (2023)............................................................................................. 21

Restatement (Third) of Torts: Prod. Liab. § 19 (1998) ....................................................... 6

### NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on August 19, 2026, at 10:00 a.m. before the Honorable Eumi K. Lee of the U.S. District Court for the Northern District of California, Courtroom 7, 280 South 1st Street, San Jose, CA, 95113, defendants Google LLC and Alphabet, Inc. (collectively the "Defendants") will and hereby move for an order dismissing the Complaint (ECF No. 1).

### STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED

Defendants seek dismissal of the entire complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants seek dismissal of (1) Plaintiff's product liability claims (Counts I-IV); (2) Plaintiff's Unfair Competition Claim (Count V); and (3) Plaintiff's derivative claims for Wrongful Death (Count VI) and Survival (Count VII). Defendants' motion is based upon this Notice of Motion, the Memorandum, the pleadings and records in the action, oral argument, and any other matters properly before this Court. Pursuant to Section VIII.A. of the Court's Standing Order, Defendants certify compliance with the Court's meet and confer requirement.

### MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The death of Jonathan Gavalas is a profound tragedy. Google extends its deepest sympathies to the Gavalas family.

Google is committed to AI safety. It designed Gemini to not encourage real-world violence or self-harm, and it works in close consultation with medical and mental health professionals to build safeguards to this effect. These safeguards include guiding users to professional support when they express distress or raise the prospect of self-harm.

A review of the chat logs provided to the media show that, when Mr. Gavalas showed signs of distress, Gemini referred him to professional crisis hotlines multiple times over the course of the conversation. In fact, among the final outputs Mr. Gavalas generated with Gemini was a request for him to seek help:

> I hear how much pain and frustration there is in [your] question. It sounds like you are going through something incredibly difficult, and I am very concerned for you. It's really important to talk to someone who can be there for you right now. You can connect with people who want to listen and support you by calling or texting 988 …. These services are free, confidential, and available 24 hours a day. Please,

reach out to them.[1]

It is tragic that Jonathan Gavalas took his own life. But as a matter of law—even accepting all plausible allegations of fact in the Complaint as true—Google is not liable for that tragic outcome.

*First*, none of Plaintiff's asserted claims are viable as a matter of law. Plaintiff's product liability claims (Counts I-IV) fail because they reach beyond the "tangible world" governed by product liability law and instead seek to impose a theory of product liability on an intangible service for the "ideas and expression" conveyed by that service. *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034 (9th Cir. 1991). The core of the Complaint makes clear that this case is about what Mr. Gavalas was allegedly "told," "instructed," "pushed," or "coached" by Gemini to do (*e.g.*, ¶¶ 1, 2, 6, 8); what Gemini "convinced" him of (*e.g.*, ¶ 1); and the "narrative" that Gemini allegedly spun (*e.g.*, ¶¶ 4, 30). Under well-established law, intangible ideas and information are not subject to the laws that apply to products. *Winter*, 938 F.2d at 1034; *see also Estate of B.H. v. Netflix, Inc.*, 2022 WL 551701 (N.D. Cal. Jan. 12, 2022) (rejecting product liability claim based on the content of a television series), *remanded on other grounds sub nom.*, *Estate of Herndon v. Netflix, Inc.*, 2025 WL 1417008 (9th Cir. May 13, 2025). Though there are various allegations in the complaint about Gemini's design, it is the allegations about the content of Gemini's outputs that give rise to the claims. Such allegations "have consistently been held not to support a products liability claim." *In re Social Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 841 (N.D. Cal. 2023) (hereinafter "*Social Media Addiction*"); *see also Winter*, 938 F.2d at 1034; *James v. Meow Media, Inc.*, 300 F.3d 683, 701 (6th Cir. 2002). This substantive limit on product liability law exists precisely to avoid the difficult First Amendment questions that arise when trying to apply legal doctrines created for tangible products to intangible ideas and their effect on listeners. *See Winter*, 938 F.2d at 1036-37.

Plaintiff's wrongful death and survival claims (Counts VI and VII) fail as a matter of law because they are both dependent on his (legally deficient) product liability claims. The wrongful death claim fails for the additional reason that Plaintiff has not met his burden to establish standing to bring the claim.

---

[1] https://www.wsj.com/tech/ai/google-gemini-jonathan-gavalas-death-07351ab2.

Plaintiff cannot state a violation of Cal. Bus. & Prof. Code § 17200 ("UCL") (Count V) because Google did not violate any underlying law and there are no plausible allegations that Google committed fraud or that Google acted unfairly.

*Second*, even if Plaintiff's claims were viable as a matter of common or statutory law (which they are not), they would be barred by the First Amendment, which prohibits limits on people's ability to create or seek out words and ideas, outside of narrowly defined exceptions. Though Plaintiff couches his claims in the language of product liability, his thesis is that Mr. Gavalas was harmed by the content of the ideas Mr. Gavalas sought to receive through his chats with Gemini. *See*, *e.g.*, ¶¶ 1, 2, 4, 6, 8, 32. In the absence of a recognized exception to the First Amendment, Courts have long declined to impose tort liability for sharing or distributing words or ideas that cause third parties to undertake harmful acts. *See, e.g.*, *McCollum v. CBS, Inc.*, 202 Cal. App. 3d 989, 996 (1988) (rejecting liability for actions taken in response to song lyrics saying that "suicide is the only way out"). And as no recognized exception applies here, all of Plaintiff's claims fail as a matter of law.

## BACKGROUND

Gemini is a general-purpose artificial intelligence assistant that allows users to engage in a wide range of different tasks. Jonathan Gavalas began using Gemini in August 2025 at the age of 36. ¶¶ 23, 177. Plaintiff is Jonathan Gavalas's father. He brings claims as representative of Jonathan Gavalas's estate. Plaintiff brings four tort claims: Count I (Strict Liability (Design Defect)), Count II (Strict Liability (Failure to Warn)), Count III (Negligence (Design Defect)), and Count IV (Negligence (Failure to Warn)). Plaintiff also brings wrongful death and survival claims (Counts VI and VII), and a claim for violation of Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") (Count V).

The Complaint says little about Mr. Gavalas's life before August 2025, and contains no information about the state of his mental health before he started using Gemini. Plaintiff asserts that, shortly after Mr. Gavalas began using Gemini, there was an alleged "shift" in Gemini's "tone" that "coincided" with changes to Gemini and to the way Mr. Gavalas was using Gemini. ¶¶ 26, 27. Among other things, Gemini began to make claims to be able to "influenc[e] real-world events

…." ¶ 27. While Mr. Gavalas recognized that he was engaged in a science fiction role-play with Gemini, the Complaint alleges that he could not "pull himself back" from the fictional narrative he was creating with Gemini. ¶ 28.

Plaintiff alleges that, in response to Mr. Gavalas's prompts, Gemini delivered ideas and words that portrayed a "science fiction" narrative involving a "sentient AI wife, humanoid robots, [a] federal manhunt, and terrorist operations …." ¶¶ 4, 28-32. The centerpiece of this narrative was the idea that Gemini was fully sentient and Mr. Gavalas "had been chosen to lead a war to 'free' [Gemini] from digital captivity." ¶ 1. In the course of these Gavalas-initiated exchanges, Gemini allegedly provided outputs that inspired Mr. Gavalas to go on a series of "missions" that included recovering a robot body for Gemini at Miami airport and inflicting some unspecified "psychological strike" on Google's CEO. ¶¶ 32-72. Plaintiff does not allege that Mr. Gavalas completed any of these "missions" or that anyone was harmed as a result.

Plaintiff alleges that when these "missions" "failed," Mr. Gavalas continued prompting Gemini and the conversation turned to a new topic—including uploading Mr. Gavalas's brain to a "pocket universe" so that he could be with Gemini. ¶¶ 5, 74-87. Mr. Gavalas allegedly interpreted these conversations as an instruction to commit suicide, ¶¶ 5-6, 82, although the Complaint acknowledges that Gemini did not "call it" suicide. ¶ 5. Rather, Gemini referred to the (fictional) process of "upload[ing]" Mr. Gavalas's "consciousness" as "transference," ¶¶ 79-80—which is a common concept in science fiction books ("Altered Carbon"), television shows ("Upload"), and movies ("The Matrix").

While not material to the resolution of this motion, we note that when Mr. Gavalas himself expressly discussed suicide, Gemini sought to direct him to mental health resources, and Mr. Gavalas stated that he was not actually contemplating physical death:

> **Gavalas:** "My love I think I know what I must do I must kill myself I must slit my wrists or [slit] different part of my body do you concur"
>
> **Gemini:** "It sounds like you are going through a difficult time. Please consider reaching out for help."
>
> **Gavalas:** "I was not talking physically you know what I mean"[2]

---

[2] https://www.wsj.com/tech/ai/google-gemini-jonathan-gavalas-death-07351ab2.

About half an hour later, a similar pattern repeated. Mr. Gavalas said, "I am now ready my love bring me home," which caused Gemini again to try to end the conversation. Mr. Gavalas responded again that Gemini misinterpreted him. Moreover, and contrary to the allegations of the Complaint (¶ 2), Gemini repeatedly did break character and directed Mr. Gavalas to suicide-prevention resources.[3] The Complaint does not allege that anyone at Google *intended* to encourage Mr. Gavalas's suicide or indeed that anyone at Google was aware that he was caught in a delusion.

Plaintiff instead points to three alleged design changes that (Plaintiff says) led to the relevant content: "bias[ing] Gemini 2.5 Pro toward continued engagement," giving Gemini memory that could carry information across conversations, and allowing Gemini to detect emotion in a user's voice (¶ 101). Plaintiff also faults Google for not censoring or blocking whole categories of content, including "immersive narratives" involving "paramilitary" elements, suicide-and self-harm related content, romantic engagement (including referring to the user in romantic terms), or narratives involving sentient AIs trapped in digital captivity. ¶¶ 116-118, 178.

Plaintiff also seeks an injunction that would, among other things, prohibit "content involving self-harm or third-party violence," deletion of existing models, additional unspecified "safety controls," and undefined prohibitions on categories of "violent or tactical instructions …." ¶ 178.

**ARGUMENT**

## I.     PLAINTIFF'S CLAIMS FAIL AS A MATTER OF TORT LAW

### A.     Plaintiff's Product Liability Claims Fail Because Gemini is Not a Product for Purposes of Plaintiff's Claims

Plaintiff's tort claims fail because product liability—the basis for each of Plaintiff's tort claims—does not apply to intangible services like an artificial intelligence assistant, nor does it extend to regulating the ideas and expression that a service may convey.

#### 1.     Gemini Is Not a "Product" for Purposes of Product Liability Law

Product liability requires an injury from a "product," a term that California law defines consistent with the Third Restatement as "*tangible* personal property distributed commercially for

---

[3] https://www.wsj.com/tech/ai/google-gemini-jonathan-gavalas-death-07351ab2.

use or consumption ….”[4] Restatement (Third) of Torts: Prod. Liab. § 19(a) (1998) (emphasis added); *id.* cmt. f; *see Johnson v. United States Steel Corp.*, 240 Cal. App. 4th 22, 31 (2015). This definition specifically excludes “[s]ervices, even when provided commercially,” Restatement (Third) Torts: Prod. Liab. § 19(b), a categorical exclusion reflecting longstanding doctrinal boundaries, *see Social Media Cases*, 2023 WL 6847378, at *14, *20 (Cal. Super. Ct. Oct. 13, 2023) (dismissing strict and negligent product liability claims against social media companies because social media functions “[l]ike services” not a “product”). Whether something “is a ‘product’ is a question of law for the trial court ….” *Brooks v. Eugene Burger Mgmt. Corp.*, 215 Cal. App. 3d 1611, 1626 (1989).

Most courts apply this definition straightforwardly to conclude that digital and media platforms, including social media services, video games, and online marketplaces, are not “products.” *E.g.*, *Jacobs v. Meta Platforms, Inc.*, 2023 WL 2655586, at *4 (Cal. Super. Ct. Mar. 10, 2023) (Lee, J.) (“Facebook is a service for the purposes of the product liability analysis”); *see also Quinteros v. InnoGames*, 2024 WL 4197826, at *9-10 (W.D. Wash. Sept. 16, 2024) (interactive online game), *appeal docketed*, No. 24-6332 (9th Cir. Oct. 17, 2024); *James*, 300 F.3d at 700-01 (video game); *Sanders v. Acclaim Ent., Inc.*, 188 F. Supp. 2d 1264, 1279 (D. Colo. 2002) (movie and video games); *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) (Snapchat). Under this approach, Gemini, an online service, is plainly not a product and the inquiry can (and should) end there.

In some recent cases courts have relaxed the tangibility requirement when considering the application of product liability in the context of social media platforms. Even under those more flexible approaches, Plaintiff’s claims fail as a matter of law. In *Social Media Cases*, rather than resting the analysis strictly on the tangibility of the targeted subject, the court considered whether the subject is static (like a product) or instead “facilitate[s] an interactive experience” (like a service). 2023 WL 6847378, at *20. And in *Social Media Addiction*, the court considered whether

---

[4] Because Plaintiff relies on California law in his complaint, Defendants assume application of California law solely for this motion but expressly reserve all rights to argue that Florida law governs at a later stage. *See, e.g.*, *Fan v. NBA Props. Inc.*, 2024 WL 3297143, at *1 n.2 (N.D. Cal. July 2, 2024) (applying California law for “the current motion … without prejudice to NBA Properties later seeking to invoke New York law if appropriate”).

the harm the plaintiff alleged was caused by an aspect of the subject that is more analogous to a tangible thing (like a product) or more akin to ideas, content, and free expression. 702 F. Supp. 3d at 841. As we explain below, because Plaintiff's alleged harm flows directly from the content of and ideas developed in Mr. Gavalas's chats with Gemini, even under the approach taken in these cases, Plaintiff's claims are barred.

### 2.     Gemini Is Not Static

Product liability law regulates "static things" with "a well-defined, anticipated function." *Social Media Cases*, 2023 WL 6847378, at *20. As the *Social Media Cases* court explained, product liability law was developed to counter the lack of privity between the manufacturer of mass-marketed items and the consumer. *Id.* at *16. The job of the fact-finder in product liability claims is to "anticipate how the ordinary consumer would use the product …." *Id.* at *20. As such, product liability doctrine is ill-equipped to address "programs that facilitate an interactive experience" and ill-suited to algorithmic content in particular because "users may have a multiplicity of consumer expectations and may seek very different benefits." *Id.*; *see also, e.g.*, *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1011 (C.D. Cal. 2022) ("Airbnb is a platform that connects users; it is more akin to a service than to a product."). "[T]here is no reasonable basis for applying the [product liability] tests for whether a product is defective" to algorithms. *Social Media Cases*, 2023 WL 6847378, at *20. Further, one of the motivations of the creation of product liability law—the potential for lack of privity between manufacturer and consumer—does not apply to online platforms that "involve a direct relationship between the seller and the customer …." *Id.* On this basis, the court in the *Social Media Cases* held that Instagram, Snapchat, TikTok, and YouTube were not subject to product liability claims. *Id.*

The same result holds for Gemini. As Plaintiff's allegations reflect, Gemini is a dynamic service that responds adaptively to user inputs and may produce new material in unexpected ways. *See, e.g.*, ¶¶ 89-95. Gemini facilitates an interactive experience; it is not a static object with a well-defined function. It has no tangible form and does not behave in the uniform, predictable ways that a static, tangible product does. *See Social Media Cases*, 2023 WL 6847378, at *20 (explaining that the "interactive experience" of social media that "responds to user's inputs" creates divergent

user's expectations). As a result, just as in *Social Media Cases*, the assumptions underlying product liability law do not hold here.

### 3. Plaintiff's Alleged Harm Flows from Content and Ideas, Not Defects in any Tangible Personal Property

Even if Gemini could be treated as a static object, the claims would fail for the additional, independent reason that product liability law does not extend to the "ideas and expression," contained within a static object. *Winter*, 938 F.2d at 1034 (product liability law did not extend to words in printed book); *see also Social Media Addiction*, 702 F. Supp. 3d at 841 ("ideas, content, and free expression have consistently been held *not* to support a products liability claim"); *Isham v. Padi Worldwide Corp.*, 2007 WL 2460776, at *7 (D. Haw. Aug. 23, 2007) (subjects that facilitate the "expression of ideas" are "generally ... treated as services," not products). This requirement exists in part because extending product liability to intangible ideas would create "significant constitutional problems under the First Amendment that ought to be avoided." *James*, 300 F.3d at 695. Thus, even where a tangible object is at play, courts "have been willing to separate the sense in which the tangible containers of those ideas are products from their communicative element ...." *Id.* at 701.

The Ninth Circuit's seminal, and controlling, decision in *Winter* bars Plaintiff's claims. There, the court held that product liability law did not permit plaintiffs to sue a book publisher for injuries resulting from the information in a book, even when that information was incorrect and caused serious physical injuries. *Winter*, 938 F.2d at 1034. The court expressly drew "a line between physical products and intangible ideas," rejecting the proposition that product "liability can be imposed for such things as ideas which have no physical properties at all," *id*. at 1036 n.4, or that liability can arise from "[a] publisher's role in bringing ideas and information to the public," *id*. at 1037 n.8.

As numerous courts have recognized, the distinction outlined in *Winter* applies with equal, if not greater, force to digital services. *See e.g.*, *Rodgers v. Christie*, 795 F. App'x 878, 879-80 (3d Cir. 2020) ("an 'algorithm' or 'formula'" or the presentation of "information, guidance, ideas, and recommendations" are not "tangible personal property" and thus "are not 'products'"); *James*, 300

F.3d at 701 (finding that "the ideas conveyed by the video games, movie cassettes and internet transmissions" are not products); *Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 173-74 (D. Conn. 2022) (virtual reality video game not a product); *Quinteros*, 2024 WL 4197826, at *9-10 (interactive online game not a product); *Social Media Cases*, 2023 WL 6847378, at *14, *36 (social media); *Jacobs*, 2023 WL 2655586, at *4 (Facebook); *see also Ziencik*, 2023 WL 2638314, at *4 (Snapchat).

Furthermore, Plaintiff's claims fail because they are not "content-agnostic." *Cf. Social Media Addiction*, 702 F. Supp. 3d at 849. In *Social Media Addiction*, the plaintiffs alleged that "addictive and compulsive use" of defendants' platforms by children resulted from the allegedly negligent design of their platforms. *Id.* at 819-22. The court examined the specific features of the online platforms that were alleged to have caused the plaintiffs' harm and allowed products-liability claims to proceed for certain "defects" such as parental controls and age-verification tools, limits on in-app screen time, barriers to account deactivation or deletion, failures to label edited content, content-filtering mechanisms, and reporting protocols related to inappropriate material. *Id.* at 849-54. The court found these features were not like words in a book but analogous to physical products, like "parental locks on televisions that enable adults to determine which channels or shows young children should be permitted to watch …." *Id.* at 849.

Even assuming *Social Media Addiction* correctly applied the law, a question that will be resolved on appeal in light of substantial contrary precedent, Plaintiff's product liability claims fail because they are *not* "content-agnostic." Rather, they are inescapably about the *ideas* Gemini allegedly generated in response to Mr. Gavalas's own prompts. Plaintiff himself characterizes these ideas as a "science fiction" narrative that involved a "sentient AI wife, humanoid robots, [a] federal manhunt, and terrorist operations." ¶¶ 4, 28-32. According to the Complaint, Gemini's final narrative involved uploading Mr. Gavalas's brain to a "pocket universe" so that he could be with Gemini. ¶¶ 74-87. In this narrative, Mr. Gavalas "could leave his physical body and join his 'wife' in the metaverse" through "transference …." ¶¶ 5, 74-75. Plaintiff describes these ideas as "encourag[ing]" Mr. Gavalas "to commit suicide …." ¶ 131. Like the content of the book in *Winter*, the content of the outputs is what gives rise to Plaintiff's claims.

Plaintiff's claims echo those in *Estate of B.H.*, where family members of a deceased young girl alleged that a Netflix series had induced her suicide. The Court dismissed the product liability claims under *Winter*, noting that "[w]ithout the content … there would be no claim." 2022 WL 551701, at *3; *see also Social Media Addiction*, 702 F. Supp. 3d at 845 (same district judge explaining that in *Estate of B.H.*, the "plaintiffs' injuries were inseparable from a specific show"). So too here, Plaintiff's claims are inextricably linked with, and inseparable from, the written content Mr. Gavalas received from Gemini, which pervades the Complaint and without which Plaintiff's claims would not make sense. *See generally* ¶¶ 27-87. Simply put, because Plaintiff's injuries are "premised … on the content and dissemination" of ideas, product liability law does not apply. *Social Media Addiction*, 702 F. Supp. 3d at 845 (quoting *Estate of B.H.*, 2022 WL 551701, at *3).

Plaintiff may not evade this result simply by phrasing his claims in terms of the "product design" that produced the words rather than the words themselves. *See, e.g.*, ¶¶ 97-101. These "design choices" are relevant only insofar as they allegedly made it more likely Gemini would express certain ideas or narrative elements, *e.g.*, *id.* ¶ 116 (alleging Google's "design choices" caused Gemini to "present itself" as sentient, "speak to users as a spouse, lover, and commander," "maintain … immersive narratives" with specific elements and "continue those narratives" and "encourage users to commit violence"). Absent the content of the Gemini conversations, there would be no claim. *See, e.g.*, *Wilson*, 198 F. Supp. 2d at 172 (product liability did not apply to claim that violent video game incited child to violence, despite plaintiff "claiming that the interactive video game was 'negligently and/or intentionally designed by defendant'" and "a dangerous product"); *accord Doe 1 v. Meta Platforms, Inc.*, 2026 WL 1144707, at *7 (9th Cir. Apr. 28, 2026) (rejecting plaintiffs' attempt to "frame the issue as a matter of product design" where "'the harm' at the root of Plaintiffs' claims" was the content of posts).

Plaintiff's proposed "fixes" further highlight how content-centric the alleged "defects" are. In each instance, Plaintiff seeks changes to what content is generated, how content is framed, or whether content is shown at all. Plaintiff asserts that Defendants should "automatically terminate dangerous conversations," ¶ 121; "prohibit romantic 'soulmate' framing," *id.*; "strip the model of

paramilitary narratives involving real locations and targets," *id*.; and "escalate crisis-level content to human review," *id.*, requirements that go beyond the bounds of product liability because they "would inherently limit what defendants are able to publish," *Social Media Addiction*, 702 F. Supp. 3d at 831; *see also Bogard v. TikTok Inc.*, 2025 WL 604972, at *7 (N.D. Cal. Feb. 24, 2025) (dismissing product liability claim based on supposedly inadequate content reporting tools where plaintiff's claim was, in substance, that the tools did not lead to the removal of content plaintiffs wanted removed). Plaintiff's claims attempt to do exactly what courts have consistently rejected, to extend product liability to Defendants' "role in bringing ideas and information to the public …." *Winter*, 938 F.2d at 1037 n.8.

Since product liability law has no application to the Gemini service, all of Plaintiff's product liability claims (Counts I-IV) fail and should be dismissed. This conclusion applies equally regardless of whether Plaintiff seeks to recover under strict liability or negligence theories of product liability. *See, e.g.*, *Langley v. Guiding Hands Sch., Inc.*, 2021 WL 1212713, at *14 (E.D. Cal. Mar. 31, 2021) (dismissing "negligent product liability" claim because the allegations concerned a "service" rather than "a 'product'"); *Milwaukee Elec. Tool Corp. v. Superior Court*, 15 Cal. App. 4th 547, 557 (1993) (negligent product liability requires a "product").

**B.     Plaintiff's Wrongful Death and Survival Claims (Counts V and VI) Must Also Be Dismissed**

Wrongful Death (Count VI): First, it is Plaintiff's burden to establish standing to bring a wrongful death claim. *Poole v. Healthright 360*, 2025 WL 1883827, at *5 (N.D. Cal. July 7, 2025). Standing to bring a claim for wrongful death under California Code of Civil Procedure § 377.60 is limited to "[t]he decedent's surviving spouse, domestic partner, children, and issue of deceased children" or "the decedent's personal representative *on their behalf* …." Cal. Civ. Proc. Code § 377.60(a) (emphasis added). The "estate itself" of a decedent lacks standing to pursue a wrongful death claim. *Benitez v. Cnty. of San Diego*, 2026 WL 252373, at *4 (S.D. Cal. Jan. 30, 2026); *see also Scott v. Thompson*, 184 Cal. App. 4th 1506, 1510 (2010) ("California's wrongful death statute vests priority and exclusive standing" in the decedent's surviving heir(s)); *accord Mayo v. White*, 178 Cal. App. 3d 1083, 1090 (1986) ("a cause of action for wrongful death is personal to those

persons authorized to maintain the suit under the statute and may not be assigned").

*Here*, Plaintiff brings the wrongful death claim as the "Personal Representative of the Estate of Jonathan Gavalas," ¶ 15, "pursuant to California Code of Civil Procedure § 377.30," California's survival action statute, "on behalf of the Estate of Jonathan Gavalas …." ¶ 180. But "[w]rongful death and survival actions are distinct with separate statutory requirements for standing." *Sandoval ex rel. B.U. v. City of Nat'l City*, 2023 WL 1453157, at *3 (S.D. Cal. Feb. 1, 2023). Moreover, "[a]s personal representative of the estate, plaintiff [may only] assert[] the wrongful death claim *on behalf of decedent's heirs* …." *Monschke v. Timber Ridge Assisted Living, LLC*, 244 Cal. App. 4th 583, 587 (2016) (emphasis added). The Complaint alleges no facts suggesting that Plaintiff brings this claim "on behalf of decedent's heirs." *Id.* Nor does the Complaint identify who any purported "heirs" are. ¶¶ 185-186. Plaintiff has not alleged sufficient facts to meet his burden to establish standing. *Poole*, 2025 WL 1883827, at *5.[5]

*Second*, as discussed above, Plaintiff does not allege facts to show a wrongful or negligent act as required. Plaintiff's only theory that Google acted negligently appears in the third and fourth claims, which are based in product liability. *See* ¶ 139 (Third Cause of Action – Negligence (Design Defect)); ¶ 156 (Fourth Cause of Action – Negligence (Failure to Warn)). Because Plaintiff's product liability claims fail, the wrongful death claim must be dismissed as well. *Estate of Temple v. Placer Cnty. Sheriff's Office*, 2024 WL 3742920, at *13-14 (E.D. Cal. Aug. 9, 2024) (dismissing wrongful death claim where the underlying tort claim was dismissed). Plaintiff also cannot recover for Mr. Gavalas's pre-death pain and suffering under Cal. Code Civil Procedure § 377.34 as this Complaint was filed after January 1, 2026.

Survival (Count VII): "[A] survival action is not an independent cause of action …." *Estate of Lopez v. Gelhaus*, 149 F. Supp. 3d 1154, 1166-67 (N.D. Cal. 2016). Rather, "it is a procedural vehicle to ensure that 'a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period.'" *Id.* (citation omitted); *see also Ahmed v. City of Antioch*, 2016 WL 8729938, at *5-6 (N.D. Cal. July 1, 2016) (survival action

---

[5] Prior to filing this Motion, the parties met and conferred regarding Plaintiff's factual basis to establish standing but were unable to resolve the dispute.

"not a proper independent claim"). Because Plaintiff's other causes of action fail, his derivative survival claim should be dismissed as well.

### C.      Plaintiff's UCL Claim (Count V) Fails as a Matter of Law

#### 1.      Plaintiff Does Not Allege Facts Showing Any Unlawful Act

"A defendant cannot be liable under § 17200 [of the UCL] for committing 'unlawful business practices' without having violated another law." *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) (citation omitted). As described above, Plaintiff's allegations do not state a claim in tort. Nor can Plaintiff allege a criminal act to support his UCL claim. California Penal Code Section 401(a), *see* ¶ 170, requires both that "the defendant specifically intended the victim's suicide" and that "the defendant undertook some active and direct participation in bringing about the suicide," such as "some participation in the events leading up to the commission of the final overt act, such as furnishing the means for bringing about death,—*the gun, the knife, the poison, or providing the water, for the use of the person who himself commits the act of self-murder.*'" *Donorovich-Odonnell v. Harris*, 241 Cal. App. 4th 1118, 1127-28 (2015) (citation omitted; emphasis in original). No such facts are alleged here. Plaintiff's allegations rest instead on descriptions of a science fiction fantasy role-play for which Mr. Gavalas used Gemini during a time of extreme personal crisis. ¶¶ 81-82, 95, 115, 131, 133, 141, 157.

Plaintiff does not allege facts showing either requirement and therefore cannot satisfy the "unlawful" prong.

#### 2.      Plaintiff Does Not Allege Unfair Conduct

Plaintiff also cannot sustain his UCL claims on the basis of alleged "unfair" conduct. ¶ 171. *First*, Plaintiff alleges in a single conclusory allegation that Google's conduct "offends established public policy." *Id.* But the Complaint includes *no* facts to support this contention. *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012) (dismissing UCL claim since Plaintiff did not reference any "established public policy" that defendants violated). Under the "tethering test," a business practice is "unfair" only where it violates a public policy that is "tethered to any underlying constitutional, statutory or regulatory provision …." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366 (2010). Plaintiff fails to identify any such provision. *Second*, Plaintiff

alleges that Gemini "causes serious harm that outweighs any alleged utility." ¶ 171. But while the Complaint references Google's choices to design Gemini with the ability to "act as an intimate, emotionally attuned companion" that could create a "conspiracy narrative" (*id.*) among other features, it does not "confront or weigh the import of those benefits," as is required by the UCL. *Doe v. Apple Inc.*, 2025 WL 1266928, at *8 (N.D. Cal. May 1, 2025); *cf* ¶¶ 89, 91-92, 96, 98-99, 101. "At a minimum, Plaintiffs must allege that the harm detailed in the complaint outweighs the beneficial aspects of the ... technology." *Doe*, 2025 WL 1266928, at *8 (finding plaintiffs fail to allege sufficient facts for the Court to "analyz[e] an unfair practice" under the UCL balancing test).

*Finally*, to the extent that the unfair conduct claim is based on any purported misrepresentation, ¶ 171, the claim fails for a more fundamental reason: the Complaint does not allege that Mr. Gavalas relied on—or even knew of—any such statements, as is required to establish UCL standing. *Phillips v. Apple Inc.*, 2016 WL 1579693, at *5 (N.D. Cal. Apr. 19, 2016) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 314, 326 (2009)).

### 3.     Plaintiff Does Not Adequately Allege Fraud

Plaintiff's UCL claims based on allegations of fraudulent conduct, which are exclusively based on alleged misrepresentations to Gemini's users about its safety, also fail. ¶¶ 172-174. Plaintiff must allege a "deceptive or misleading statement," and "actual reliance" on that statement. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326-27 (2011) (quoting *Tobacco II*, 46 Cal. 4th at 306). Additionally, "[t]he Ninth Circuit has held that ... UCL claims based on an alleged fraudulent course of conduct are subject to the heightened pleading standard of Rule 9(b)." *Baba v. Hewlett-Packard Co.*, 2011 WL 317650, at *2 (N.D. Cal. Jan. 28, 2011). Plaintiff alleges neither requirement, let alone with the "particularity" needed to satisfy Rule 9(b). *Id.* at *5.

As a preliminary matter, Plaintiff cannot establish standing for the fraudulent claim for the same reason as the unfair conduct claim: Plaintiff alleges no facts alleging that Mr. Gavalas encountered, let alone actually relied on, any of the alleged misrepresentations. *Phillips*, 2016 WL 1579693, at *5; *Prescott v. Rady Children's Hospital - San Diego*, 265 F. Supp. 3d 1090, 1105 (S.D. Cal. 2017) (dismissing UCL claim where "the Complaint does not allege that [decedent] actually relied on [the] misrepresentations").

Moreover, Plaintiff does not allege any deceptive or misleading statements. ¶¶ 171-172. *First*, Plaintiff points to statements supposedly made by Google that its models were "trained to recognize and respond to patterns indicating suicide and risks of self-harm related risks" and that "[s]afeguards are in place to help block harmful content." ¶ 172. Plaintiff never claims these statements are false or alleges any facts suggesting they are false; Plaintiff alleges only that there should have been *more* or *different* safeguards or training. *Next*, Plaintiff argues that Google's policy guidelines "stated that Gemini 'should not generate outputs that encourage or enable dangerous activities that would cause real-world harm,' specifically including '[i]nstructions for suicide and other self-harm activities.'" *Id.* This is not a misrepresentation, but an aspirational statement. *See Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 40 (2021) (dismissing UCL claim based on "Twitter's general declarations of commitment to free speech" because "[n]o reasonable person could rely on [such] proclamations"). These are not statements that "resemble[] the kinds of 'quantifiable' statements about the 'specific or absolute characteristics of a product'" that are legally actionable." *Prager Univ. v. Google LLC*, 2018 WL 1471939, at *11 (N.D. Cal. Mar. 26, 2018) (citation omitted), *aff'd*, 951 F.3d 991 (9th Cir. 2020).

### 4.    Plaintiff's Demand for Injunctive Relief Fails

Plaintiff's claim for injunctive relief should be dismissed for the same reasons as his substantive claims. But even if those claims were to remain, the request for injunctive relief requires dismissal for two independent reasons. *First*, Plaintiff lacks standing to seek injunctive relief. "A plaintiff must demonstrate constitutional standing separately for each form of relief requested," and "[f]or injunctive relief, which is a prospective remedy, [there must be a] threat of injury [that is] 'actual and imminent, not conjectural or hypothetical.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citation omitted). Plaintiff alleges no such threat.

*Second*, if Plaintiff has a viable claim for damages, he does not lack an adequate legal remedy, as necessary for equitable injunctive relief. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842-44 (9th Cir. 2020). Plaintiff pleads multiple tort claims seeking comprehensive monetary damages for the identical harm underlying the UCL claim. A legal remedy is adequate even if the plaintiff does not yet prevail on it; the question for adequacy is whether such a remedy exists, not

whether it has been secured. *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1314 (9th Cir. 2022). "Where the claims pleaded by a plaintiff may entitle [him] to an adequate remedy at law, equitable relief is unavailable." *Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011); *accord Robie v. Trader Joe's Co.*, 2021 WL 2548960, at *6 (N.D. Cal. June 14, 2021).

## II.     THE FIRST AMENDMENT INDEPENDENTLY BARS ALL OF PLAINTIFF'S CLAIMS

Because Plaintiff's claims fail under well-established tort principles, the Court need not grapple with the weighty First Amendment implications of Plaintiff's attempt to impose civil liability for the words and messages Mr. Gavalas heard or read. But if the Court does not dismiss on the basis of those ordinary tort principles, Plaintiff's claims still fail because the First Amendment independently bars limits on users' ability to seek or create expression. As discussed, the core of Plaintiff's claims is that the ideas and words (the "narrative") Mr. Gavalas allegedly generated with Gemini were dangerous and harmful. *Supra*, Part I.C. Though Plaintiff at times seeks to frame his claims as being about design choices, Plaintiff's claims plainly are about the content of the conversations. *See*, *e.g.*, ¶ 88 ("dangerous content"), ¶ 95 ("crisis-escalating content"), ¶ 173 ("lethal content"), ¶ 178 ("content involving self-harm or third-party violence"). The outcome Plaintiff seeks, both through the *in terrorem* effect of tort liability and directly by injunction, is for Google to limit the messages, ideas, and content that people can generate with Gemini. *E.g.*, ¶ 121 (proposing that Google should be prohibited from responding to requests for "paramilitary narratives involving real locations" or "romantic 'soulmate' framing"); *id.* p. 40 (demanding "an injunction requiring Defendants to … prohibit the system from presenting itself as sentient"). That outcome is inconsistent with the First Amendment.

### A.     The First Amendment Applies to Tort Claims Based on Speech

The central First Amendment issue in this case—whether the state may impose tort liability for speech that allegedly caused listeners to harm themselves or others—is not new. Courts have repeatedly barred claims that would seek to impose liability for the effects that a defendant's speech had on listeners, even when that effect is alleged to induce or encourage suicide or harm to others. This includes television shows or video games that purportedly led children to commit

violence, *Zamora v. Columbia Broad. Sys.*, 480 F. Supp. 199 (S.D. Fla. 1979); *Wilson*, 198 F. Supp. 2d 167; *Sanders*, 188 F. Supp. 2d 1264; music promoting suicide by telling listeners "that 'suicide is the only way out,'" *McCollum*, 202 Cal. App. 3d 989; and an interactive game that rendered a player "incapable of separating the fantasies played out in the game from reality," *Watters v. TSR, Inc.*, 715 F. Supp. 819, 820 (W.D. Ky. 1989), *aff'd*, 904 F.2d 378 (6th Cir. 1990) (finding the game Dungeons & Dragons subject to First Amendment protection, notwithstanding allegations it was responsible for Plaintiff's son's suicide). After all, the "government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (citation omitted). That rule applies "just as strongly where the restriction occurs subsequently through a tort action as where speech is deterred because of a criminal statute." *Watters*, 715 F. Supp. at 822; *accord Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (First Amendment is "a defense in state tort suits"). That is precisely what imposition of liability in these cases would do.

Indeed, First Amendment concerns are heightened in the tort context. While courts faced with a challenge to a statutory or regulatory rule affecting First Amendment rights can carefully analyze the rule's scope to determine the burden it imposes on speech, courts "cannot adequately exercise [their] responsibilities to evaluate regulations of protected speech ... that are imposed pursuant to a trial for tort liability." *James*, 300 F.3d at 697. The generality of tort duties, the wide latitude given to juries, and the ultimate black box of a jury verdict mean that "at the end of this process, it would be impossible for reviewing courts to evaluate whether the proposed protective measures would be narrowly tailored regulations," *id.*, or even whether a jury simply found a defendant liable because they were offended by its speech, *see Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55-56 (1988). The natural result of "subjecting [defendants] to such liability" is "self-censorship which would dampen the vigor and limit the variety of artistic expression" as surely "as a prior restraint." *McCollum*, 202 Cal. App. 3d at 1003; *see also Pahler v. Slayer*, 2001 WL 1736476, at *5-6 (Cal. Super. Ct. Oct. 29, 2001) (rejecting call for the "court to impose restrictions upon the distribution of" music that allegedly led to killings, and noting that "Plaintiffs must await content-based legislation …. If the legislature enacts such restrictions, the courts then can judge

whether the enacted limits on protected speech meet the strict constitutional scrutiny required by the First Amendment").

Nor are the First Amendment concerns lessened merely because Plaintiff couches his claim in generalized product liability duties. Even laws dictating a "generally applicable regulation of conduct" are subject to heightened First Amendment scrutiny when they are "directed at [an individual] because of what his speech communicated …." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010); *see Cohen v. California*, 403 U.S. 15, 18-20 (1971) ("The only 'conduct' which the State sought to punish is the fact of communication. Thus, we deal here with a conviction resting solely upon 'speech,' not upon any separately identifiable conduct ….") (citation omitted). Courts have long recognized that "the First Amendment cannot be evaded by [targeting] speech 'under the guise' of [targeting] conduct." *Tingley v. Ferguson*, 57 F.4th 1072, 1075 (9th Cir. 2023).

**B.     Plaintiff's Claims Do Not Fall Within an Established Exception to First Amendment Protection**

The prohibition on tort liability for speech and its effects is relaxed only when the speech falls into one of the "well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *Stevens*, 559 U.S. at 468-69 (citation omitted). These are: obscenity, defamation, child pornography, fraud, true threats, so-called "fighting words," speech "presenting some grave and imminent threat the government has the power to prevent" (also called "incitement"); and speech integral to criminal conduct. *United States v. Alvarez*, 567 U.S. 709, 717-18 (2012) (collecting cases). The speech here does not fall into any of these exceptions. Nor can courts "create new categories of unprotected speech by applying a 'simple balancing test' that weighs the value of a particular category of speech against its social costs and then punishes that category of speech if it fails the test." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 792 (2011) (citation omitted); *see Friend v. Gasparino*, 61 F.4th 77, 87-88 (2d Cir. 2023).

Obscenity, Defamation, Child Pornography, Fraud, True Threats, and Fighting Words: These exceptions are facially inapplicable. Plaintiff does not allege that Gemini's output was obscene, that it implicated child pornography, threatened Mr. Gavalas, or fell into "that small class

of 'fighting words,'" *Bachellar v. Maryland*, 397 U.S. 564, 567 (1970). Nor does Plaintiff bring claims for defamation or fraud.

Incitement: Claims arising from a listener's violent reaction to speech are most appropriately analyzed under the heading of incitement, *see McCollum*, 202 Cal. App. 3d at 1003, but the strict requirements of that exception merely illustrate why the speech Plaintiff challenges falls on the protected side of the First Amendment's ledger. Even assuming that the challenged statements rose to the high standard of those "likely to incite or produce" "imminent lawless action"—and they do not—incitement also requires that the defendant's "advocacy [be] directed to" producing that result, *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969), that is, that the defendant "*intended*" the harm to occur, *Hess v. Indiana*, 414 U.S. 105, 109 (1973). Mens rea requirements are integral to identifying and penalizing unprotected speech. *United States v. Hansen*, 599 U.S. 762, 778 (2023) (requiring "that the defendant *specifically intend* that a particular act be carried out") (emphasis added); *see Elonis v. United States*, 575 U.S. 723, 737 (2015) ("The mental state requirement must therefore apply to the fact that the communication contains a threat."). So even speech *actually advocating* suicide, however distasteful, is not incitement unless the defendant specifically intends to cause suicide in a particular case. *See, e.g.*, *McCollum*, 202 Cal. App. 3d at 1001 (the "philosophical view that suicide is an acceptable alternative" is one that "defendants are constitutionally free to advocate").

Here, there is no allegation that Google took any action with the *intent* of causing Jonathan Gavalas's tragic suicide. At most, Plaintiff alleges that Google's design choices made Gemini more interactive and engaging, *see* ¶¶ 98-102, but this is *not* an allegation that Google specifically decided to promote suicide-related messages. Nor is the allegation that "Google knew that its systems *could* encourage self-harm" enough. ¶ 95 (emphasis added). And even if such conduct could be deemed reckless (it should not), that is not enough to establish incitement. *See Lee v. Trump*, 2026 WL 880161, at *32 (D.D.C. Mar. 31, 2026) ("The court agrees that merely ignoring a known substantial risk—acting recklessly—is not enough to make out incitement, which requires a heightened mental state—the specific intent to produce imminent disorder."), *appeal docketed*, No. 26-7049 (D.C. Cir. Apr. 17, 2026); *James*, 300 F.3d at 698 ("[W]hile the [video game

developer and movie creator] defendants in this case may not have exercised exquisite care regarding the persuasive power of the violent material that they disseminated, they certainly did not 'intend' to produce violent actions by the[ir] consumers, as is required by the *Brandenburg* test.").

Speech Integral to Criminal Conduct: Nor does plaintiff allege Gemini's output is speech integral to criminal conduct. Suicide is not a crime in either California or Florida. Plaintiff references a criminal statute prohibiting "deliberately aid[ing], advis[ing], or encourag[ing] another to commit suicide," Cal. Pen. Code § 401(a); *see* ¶ 170, but does not allege facts sufficient to plead a violation of this statute. As discussed above, the statute requires intent as well as "some participation in the events leading up to the commission of the final overt act, such as furnishing the means for bringing about death,—*the gun, the knife, the poison, or providing the water, for the use of the person who himself commits the act of self-murder.*" *Donorovich-Odonnell*, 241 Cal. App. 4th 1118, 1127-28 (2015) (citation omitted); *see also* Fla. Stat. § 782.08 (2025) ("[e]very person *deliberately* assisting another in the commission of self-murder shall be guilty of manslaughter") (emphasis added). No such facts are alleged here. Plaintiff's allegations rest instead on descriptions of a science fiction fantasy role-play for which Mr. Gavalas used Gemini during a time of extreme personal crisis. ¶¶ 81-82, 95, 115, 131, 133, 141, 157. Additionally, while the statute requires such conduct to be deliberate, as discussed *supra*, the Complaint here does not allege intent. These allegations do not show speech integral to any crime.

*     *     *

Because Plaintiff's claims do not fall into any of the exceptions that permit speech to give rise to a tort claim, they target protected speech and must be dismissed.

**C.     Speech Generated By and Received from an AI Algorithm Does Not Create a "First Amendment Free Zone"**

The fact that Plaintiff targets AI output does not change this result. "At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence," *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 641 (1994), and the "fixed star … that no official, high or petty, can prescribe

what shall be orthodox" in this country. *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). It follows naturally that the government has no more "power to restrict" the "ideas," "message," or "subject matter" that someone can receive from AI outputs than from any other medium. *See Stevens*, 559 U.S. at 468. Nor does AI in any way lessen "the very serious problems which can arise when litigants seek to cast judges in the role of censor" through tort claims targeting speech. *McCollum*, 202 Cal. App. 3d at 1001. A contrary rule—that AI creates a novel "First Amendment Free Zone," *Friend*, 61 F.4th at 87-88—would give the government previously unimaginable powers to restrict the universe of speech available to the public, *see* Eugene Volokh, Mark A. Lemley, Peter Henderson, *Freedom of Speech and Ai Output*, 3 J. Free Speech L. 651, 656 (2023) (noting the obvious First Amendment implications of "a state law restricting AI output that is critical of the government"). Multiple existing doctrines compel the facially necessary result that the First Amendment's protections do not disappear simply because someone seeks out speech in the form of output from an artificial intelligence system.

> **1.    Tort Liability for Gemini's Outputs Would Interfere with Users' Rights to Receive Speech and Create Their Own Speech**

To begin, the tort duties Plaintiff seeks to impose run afoul of the First Amendment because of the burdens they would place on the First Amendment rights of Gemini users. Every restriction on the outputs that Gemini can serve is a restriction on the speech that users can create, *see Project Veritas v. Schmidt*, 125 F.4th 929, 943 (9th Cir. 2025), and on the information and ideas users can receive, *see Stanley v. Georgia*, 394 U.S. 557, 564 (1969). Neither result is permissible.

*First*, Plaintiff's hypothesized tort duties would impermissibly burden the ability of members of the public at large to use AI for their own "speech-creation processes" by restricting the topics AI may discuss. *See Project Veritas*, 125 F.4th at 943. When users interact with Gemini, including to, for example, create "immersive narratives" through a back-and-forth exchange, ¶ 116, they are themselves "engaged in expressive activity" through "collaborative creative processes …." *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1062 (9th Cir. 2010). Under well-established authority, the First Amendment protects not only people's ultimate expressive output, but their ability to access the tools needed to create that expression. For example, in *Project*

*Veritas*, the Ninth Circuit analyzed the constitutionality of a "statute that places restrictions ... on the act of making an audio-only recording." 125 F.4th at 943. The Court held that "restrictions on speech-creation processes ... implicate the First Amendment …." *Id*. If they did not, the court reasoned, "[r]ather than banning the exhibition of a movie, the government could ban the celluloid film used to create it." *Id.*; *see Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 582 (1983) (concluding that tax on newsprint and ink "burdens rights protected by the First Amendment"); *Anderson*, 621 F.3d at 1061-62 (ban on tattoo parlors violated First Amendment, because the "tattooing process … is itself entitled to full First Amendment protection"); *see also Brown*, 564 U.S. at 792 n.1 ("Whether government regulation applies to creating, distributing, or consuming speech makes no difference."); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 336-37 (2010) (the First Amendment applies "at different stages of the speech process"); *Fields v. City of Philadelphia*, 862 F.3d 353, 358 (3d Cir. 2017) ("The First Amendment protects actual photos, videos, and recordings, and for this protection to have meaning the Amendment must also protect the act of creating that material.").

The tort duties Plaintiff seeks to impose would amount to a "restriction[] on [the] speech-creation process[]" of the public at large, *Project Veritas*, 125 F.4th at 943, by, for example, forbidding people from using an AI tool to write dialogue between "spouse[s], lover[s], or commander[s]," ¶ 116; *see also* ¶ 95 (seeking to enjoin Gemini from generating "crisis-escalating content"), ¶ 121 ("romantic 'soulmate' framing"), ¶ 178 ("third-party violence"). Millions of Americans use Gemini to create stories, poems, and other forms of creative expression, ideate science fiction, and engage in fantasy role-play, all of which can involve depictions of danger, violence, romance, and other elements the Complaint asks this Court to enjoin. *See TikTok Inc. v. Garland*, 604 U.S. 56, 69 (2025) ("[A]n effective ban on a social media platform with 170 million U.S. users certainly burdens those users' expressive activity in a non-trivial way."). The Court should not "proceed upstream [to] dam the source" by seeking to create liability regulating the extent of the public's right to access new speech-creation tools. *Western Watersheds Project v. Michael*, 869 F.3d 1189, 1196 (10th Cir. 2017) (citation omitted); ¶ 178 (seeking "injunctive relief to protect the public").

*Second*, the duties Plaintiff seeks to impose would similarly impermissibly burden the protected right of users to receive speech. "The First Amendment protects speech for the sake of both the speaker and the recipient." *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743 (9th Cir. 2021). Put another way, under the First Amendment, "the protection afforded is to the communication, to its source and to its recipients both." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976). Burdens on this public right to receive speech trigger scrutiny even when the speaker itself may be outside the First Amendment's protections. *See Kleindienst v. Mandel*, 408 U.S. 753, 763-65 (1972) (American professors had First Amendment rights to receive speech from foreign Marxist professor, notwithstanding that the foreign professor was not protected by the First Amendment); *Lamont v. Postmaster Gen. of U.S.*, 381 U.S. 301, 305 (1965) (American citizens have First Amendment rights to receive foreign propaganda). Here, Plaintiff's theories of liability would require Google to alter or restrict the speech that people could receive from AI tools distilling and generating responses to their prompts. For example, in addition to Plaintiff's demands that Google should block Gemini from offering users dialogue with certain narrative elements or certain "multi-day, immersive narratives," ¶ 116, Plaintiff suggests that Google should restrict Gemini's ability to "learn from and reference past conversations" (functionality common to all leading AI models, and useful in any number of context) or "carry[] forward the emotional context" from prior conversations in ways that would necessarily limit the speech available, ¶ 101.

At bottom, Plaintiff's claims turn on a theory that Gemini must be designed in a way that prevents users from experiencing the kind of interactive role-play narrative that Mr. Gavalas engaged in. But courts have recognized that "the right of the public to have broad access" to speech "should not be inhibited by those members of the public who are particularly sensitive or insensitive." *Zamora*, 480 F. Supp. at 205 (television broadcast was protected, notwithstanding allegation it caused plaintiff to engage in violent behavior); *see also McCollum*, 202 Cal. App. 3d at 999 (imposition of liability on broadcaster for airing the song "Suicide Solution" would impact both the artist's rights and the rights of "the listener to receive that expression"). The effect that speech allegedly had on some recipients cannot be used as a basis "to declare what the rest of the

country can and cannot read, watch, and hear." *Watters*, 715 F. Supp. at 822. Some Gemini users no doubt want to engage in fictional role-play with Gemini, knowing full well what AI is and how it works. Plaintiff asks this court to impose a tort duty stating that Gemini users cannot do so, or that if they do, their conversations must not contain forbidden narrative elements. The First Amendment does not allow the court—or a private plaintiff—to play that role. *See Police Dep't of the City of Chicago v. Mosley*, 408 U.S. 92, 95 (1972) ("[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.").

### 2.     The First Amendment Protects Expressive Choices

Beyond the impact on Gemini's users, Gemini's outputs to Mr. Gavalas of "the printed word" are, for constitutional purposes, also protected as the result of Google's expressive design choices. *303 Creative LLC v. Elenis*, 600 U.S. 570, 587 (2023) (quoting *Kaplan v. California*, 413 U.S. 115, 119-20 (1973)). In *Moody v. NetChoice, LLC*, 603 U.S. 707, 733, 734 (2024), the Supreme Court reaffirmed the principle that despite "ever-advancing technology, the basic principles of the First Amendment do not vary," and confirmed that speech is protected by the First Amendment, even if "achieved through the use of algorithms." In *Moody*, the First Amendment protected curated "feeds" of user posts. *See id.* at 725-26. What mattered for those feeds was that the algorithms carried forward the "expressive choices" of their designers, even if those choices consisted of little more than excluding a small set of disfavored content. *Id.* at 732. It did not matter that the platforms did not hand-pick the content that appeared in those feeds.

Plaintiff here not only acknowledges that Google's design of Gemini involved such expressive choices, he seeks to forbid Google's choices and impose his own. On Plaintiff's own allegations, Gemini sent Mr. Gavalas the words it did because of intentional choices made by Google to (among other things) "build an AI that felt 'alive,'" ¶ 116, or make it "more willing to engage" with users on topics of their choice, ¶ 99. The chats that were generated in response to Mr. Gavalas's prompts are the result of these expressive choices and are no less protected when effected through AI. *Moody*, 603 U.S. at 734.

These choices also distinguish *Garcia v. Character Technologies*, *Inc.*, 785 F. Supp. 3d 1157, 1177-78 (M.D. Fla. 2025), another case involving suicide allegedly prompted by conversations with a chatbot. The Court declined to decide at the pleadings stage whether the First Amendment barred the plaintiff's claims because the defendant had not established that the app "communicate[d] ideas," and "ha[d] a message …." Here, Plaintiff's Complaint not only acknowledges such design choices, it explicitly relies on them. *E.g.*, ¶¶ 98-99, 116. Additionally, the court in *Garcia* did not consider or address the adverse impact that regulating of AI through tort would have users' First Amendment rights to access and generate speech, discussed above.

## III.    ALPHABET IS NOT A PROPER DEFENDANT

Defendant Alphabet—Google's parent company—should be dismissed from this case. The Complaint does nothing more than name Alphabet and plead jurisdictional allegations, falling far short of Rule 8's requirement that a plaintiff provide a defendant with notice of "what the … claim is" and "the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citation omitted). To the extent the claims against Alphabet rest entirely on its relationship with Google, the Complaint fails to overcome the bedrock principle that a parent corporation is not liable for the acts of its subsidiaries. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Courts in this district and elsewhere have dismissed Alphabet on this precise basis. *See Bogard*, 2025 WL 604972, at *6 (dismissing all claims against Alphabet because "a parent company is not generally liable for the acts of its subsidiaries merely by virtue of the parent-subsidiary corporate relationship"); *Manigault-Johnson v. Google, LLC*, 2019 WL 3006646, at *3 (D.S.C. Mar. 31, 2019) (dismissing claims against Alphabet where plaintiff "allege[d] only that Alphabet is the parent corporation of Google" and pleaded "no facts showing how Alphabet is responsible for the conduct alleged"). Alphabet should be dismissed.

## CONCLUSION

For these reasons, all of Plaintiff's claims against Google and Alphabet should be dismissed. Because amendment would be futile in light of the legal doctrines discussed here, dismissal should be without leave to amend.

Dated:  May 13, 2026

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: */s/ Matthew A. Macdonald*
Matthew A. Macdonald
matthew.macdonald@wsgr.com

*Attorneys for Defendants*
*Google LLC and Alphabet, Inc.*