MATTHEW A. MACDONALD, SBN 255269
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
953 East 3rd Street, Suite 100
Los Angeles, CA  90013-1952
Telephone: (323) 210-2900
Email:      matthew.macdonald@wsgr.com

JORDAN R. JAFFE, SBN 254886
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA  94105-1126
Telephone: (415) 947-2000
Email:      jjaffe@wsgr.com

*Attorneys for Defendants*
*Google LLC and Alphabet Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOEL GAVALAS, as Personal Representative of the ESTATE OF JONATHAN GAVALAS,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC, a Delaware Company, and ALPHABET INC., a Delaware Corporation,<br><br>Defendants. | Case No.: 5:26-cv-1849-EKL-SVK<br><br>**GOOGLE'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**<br><br>Date:   August 5, 2026<br>Time:   10:00 a.m.<br>Courtroom:    7, 4th Floor<br><br>Before: Honorable Eumi Kim Lee |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................................1

II.  PLAINTIFF'S TORT CLAIMS FAIL AS A MATTER OF LAW ....................................1

    A.  Words and Ideas Cannot Be the Basis for a Product Liability Claim ....................2

    B.  Gemini is a Service .................................................................................................4

    C.  Plaintiff Cannot Recast His Product-Liability Negligence Claims as Generalized Common-Law Negligence for The First Time In Opposition ............5

III.  PLAINTIFF'S UCL CLAIM FAILS IN ITS ENTIRETY .................................................6

IV.  THE WRONGFUL DEATH AND SURVIVAL CLAIMS MUST BE DISMISSED ........7

V.  THE FIRST AMENDMENT INDEPENDENTLY BARS PLAINTIFF'S CLAIMS ........7

    A.  Plaintiff's Claims Are Not Content Neutral ............................................................7

    B.  The First Amendment Does Not Depend on Identifying a Speaker .........................8

    C.  Protection Does Not Depend on Identifying Speech as "Google's" ......................10

        1.  Google is Protected in Disseminating Speech That is Not Its Own ..........10

        2.  Gemini's Outputs Reflect Google's Expressive Design Choices .............11

        3.  Plaintiff's Claims Burden the Rights of Individuals Using AI Services .....................................................................................................11

        4.  The Court May Consider the Burdens on Third-Party Rights ..................13

    D.  First Amendment Protections Are Not Limited to Matters of Public Concern .....14

VI.  ALPHABET INC. MUST BE DISMISSED ....................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*303 Creative LLC v. Elenis*,
  600 U.S. 570 (2023) ............................................................................................... 10

*Ameer v. Lyft, Inc.*,
  711 S.W.3d 534 (Mo. Ct. App. 2025) ................................................................. 4, 5

*Anderson v. City of Hermosa Beach*,
  621 F.3d 1051 (9th Cir. 2010) .............................................................................. 11

*Angelilli v. Activision Blizzard, Inc.*,
  781 F. Supp. 3d 691 (N.D. Ill. 2025) .................................................................... 14

*Arcara v. Cloud Books, Inc.*,
  478 U.S. 697 (1986) .............................................................................................. 12

*Ashcroft v. Free Speech Coal.*,
  535 U.S. 234 (2002) ................................................................................................ 9

*Bd. of Educ, Island Trees Union Free Sch. Dist. No. 26. v. Pico*,
  457 U.S. 853 (1982) .............................................................................................. 10

*Brown v. Ent. Merchants Ass'n*,
  564 U.S. 786 (2011) ........................................................................................... 9, 13

*Chiles v. Salazar*,
  146 S. Ct 1010 (2026) ........................................................................................ 7, 15

*Citizens United v. Fed. Election Comm'n*,
  558 U.S. 310 (2010) ................................................................................................ 9

*Counterman v. Colorado*,
  600 U.S. 66 (2023) ................................................................................................ 14

*Courtright v. Epic Games, Inc.*,
  795 F. Supp. 3d 1156 (W.D. Mo. 2025) ............................................................... 14

*Craig v. Boren*,
  429 U.S. 190 (1976) .............................................................................................. 13

*Doe v. SuccessfulMatch.com*,
  70 F. Supp. 3d 1066 (N.D. Cal. 2014) .................................................................... 6

*Dorsey v. Nat'l Enquirer, Inc.*,
  973 F.2d 1431 (9th Cir. 1992) .............................................................................. 12

*e-ventures Worldwide, LLC v. Google, Inc.*,
  2017 WL 2210029 (M.D. Fla. Feb. 8, 2017) .......................................................... 9

*Estate of B.H. v. Netflix, Inc.*,
  2022 WL 551701 (N.D. Cal. Jan. 12, 2022) .......................................... 1, 2, 3, 14

*First Nat'l Bank of Bos. v. Bellotti*,
　435 U.S. 765 (1978) ................................................................................................................. 10

*Garcia v. Character Technologies, Inc.*,
　785 F. Supp. 3d 1157 (M.D. Fla. 2025) ....................................................................... 3, 4, 13, 14

*Griswold v. Connecticut*,
　381 U.S. 479 (1965) ................................................................................................................. 13

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston*,
　515 U.S. 557 (1995) .............................................................................................................. 9, 11

*In re Acadia Pharms. Inc. Sec. Litig.*,
　2022 WL 36493 (S.D. Cal. Jan. 3, 2022) ................................................................................. 12

*In re Social Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
　702 F. Supp. 3d 809 (N.D. Cal. 2023) ............................................................................... 2, 3, 14

*In Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
　777 F. Supp. 3d 1016 (N.D. Cal. 2025) ................................................................................... 14

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
　745 F. Supp. 3d 869 (N.D. Cal. 2024) ....................................................................................... 5

*Interstate Circuit, Inc. v. City of Dallas*,
　390 U.S. 676 (1968) ................................................................................................................. 10

*Isham v. Padi Worldwide Corp.*,
　2007 WL 2460776 (D. Haw. Aug. 23, 2007) .............................................................................. 2

*James v. Meow Media, Inc.*,
　300 F.3d 683 (6th Cir. 2002) .................................................................................................... 12

*Kleindienst v. Mandel*,
　408 U.S. 753 (1972) ................................................................................................................... 9

*Kowalski v. Tesmer*,
　543 U.S. 125 (2004) ................................................................................................................. 13

*Kwikset Corp. v. Superior Court*,
　51 Cal. 4th 310 (2011) ............................................................................................................... 7

*Manhattan Cmty. Access Corp. v. Halleck*,
　587 U.S. 802 (2019) ................................................................................................................. 10

*Martin v. City of Struthers, Ohio*,
　319 U.S. 141 (1943) ................................................................................................................. 10

*McCollum v. CBS, Inc.*,
　202 Cal. App. 3d 989 (1988) .................................................................................................... 13

*Minneapolis Star & Trib. Co. v. Minnesota Com'r of Revenue*,
　460 U.S. 575 (1983) ................................................................................................................. 12

*Moody v. NetChoice, LLC*,
　603 U.S. 707 (2024) ................................................................................................................. 11

*Murthy v. Missouri*,
603 U.S. 43 (2024) ................................................................................................................ 13, 14

*NetChoice, LLC v. Att'y Gen., Fla.*,
34 F.4th 1196 (11th Cir. 2022) ..................................................................................................... 11

*NetChoice, LLC v. Bonta*,
113 F.4th 1101 (9th Cir. 2024) ...................................................................................................... 11

*NetChoice, L.L.C. v. Fitch*,
134 F.4th 799 (5th Cir. 2025) ....................................................................................................... 13

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) ...................................................................................................................... 12

*Olivia N. v. Nat'l Broad. Co.*,
126 Cal. App. 3d 488 (1981) ......................................................................................................... 12

*Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of California*,
475 U.S. 1 (1986) ............................................................................................................................ 9

*People v. Hinojos*,
111 Cal. App. 5th 19 (2025) .......................................................................................................... 14

*Phillips v. Apple Inc.*,
2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ............................................................................... 6

*Pipitone v. Barksdale*,
2026 WL 1040368 (C.D. Cal. Jan. 5, 2026) ................................................................................... 7

*Project Veritas v. Schmidt*,
125 F.4th 929 (9th Cir. 2025) ................................................................................................. 11, 12

*Quiroz v. Seventh Ave. Ctr.*,
140 Cal. App. 4th 1256 (2006) ...................................................................................................... 7

*R.A.V. v. City of St. Paul*,
505 U.S. 377 (1992) ......................................................................................................................... 8

*Reaud v. Facebook Inc.*,
2024 WL 4126066 (N.D. Cal. Sept. 9, 2024) ................................................................................. 5

*Reed v. Town of Gilbert, Ariz.*,
576 U.S. 155 (2015) ......................................................................................................................... 8

*Rodgers v. Christie*,
795 F. App'x 878 (3d Cir. 2020) ..................................................................................................... 4

*Smith v. California*,
361 U.S. 147 (1959) ............................................................................................................ 10, 11, 13

*Snyder v. Phelps*,
562 U.S. 443 (2011) ................................................................................................................. 14, 15

*Social Media Cases*,
2023 WL 6847378 (Cal. Super. Ct. Oct. 13, 2023) ............................................................... *passim*

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ............................................................................................................ 10

*Stricklin v. Stefani*,
    358 F. Supp. 3d 516 (W.D.N.C. 2018)................................................................................ 14

*TikTok Inc. v. Garland*,
    604 U.S. 56 (2025) ............................................................................................................ 13

*Turner Broad. Sys., Inc. v. FCC*,
    512 U.S. 622 (1994) .......................................................................................................... 10

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ............................................................................................................ 15

*Va. State Bd. of Pharm. v. Va. Citizens Consumer Council*,
    425 U.S. 748 (1976) ............................................................................................................ 9

*W. Virginia State Bd. of Educ. v. Barnette*,
    319 U.S. 624 (1943) ............................................................................................................ 8

*Walsh v. Nev. Dep't of Human Res.*,
    471 F.3d 1033 (9th Cir. 2006)............................................................................................. 6

*Winter v. G.P. Putnam's Sons*,
    938 F.2d 1033 (9th Cir. 1991).................................................................................. 1, 2, 3, 6

## STATUTES

Cal. Civ. Proc. Code § 377.60(a) ................................................................................................. 7

Fla. Stat. § 732.102...................................................................................................................... 7

## OTHER AUTHORITIES

Cal. Civil Jury Instruction 400 .................................................................................................... 6

Cal. Civil Jury Instructions 1220-1222 ....................................................................................... 6

Restatement (Third) of Torts: Prods............................................................................................. 4

## I.     INTRODUCTION

The Opposition confirms that Plaintiff's claims turn on the content of communications Jonathan Gavalas had with Gemini: the alleged "hazard" is found in the words and ideas that they exchanged; the alleged "defect" is premised in editorial judgments about when Gemini should "refus[e] to respond to users"; and the remedy Plaintiff proposes is to force Google—by injunction or through the *in terrorem* effect of liability—to censor the words and ideas that adult users like Gavalas can exchange with Gemini. But without the content of the words exchanged, "there would be no claim." *Estate of B.H. v. Netflix, Inc.*, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022).

For good reasons, tort law—and controlling precedent—has consistently rejected such claims. *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034 (9th Cir. 1991). Not only would such theories raise grave free speech concerns, but they would also ensnare juries and courts in the impossible task of judging whether and what speech is "defective." That this case involves speech created by a person interacting with a general-purpose artificial intelligence assistant does not resolve either of those challenges. Plaintiff cites no case permitting tort liability based on the exchange of ideas, and applying product liability to the substance of the words and ideas generated by an expressive tool like Gemini would represent an unprecedented expansion of tort law.

Further, Plaintiff's expansion of tort law is precluded by the First Amendment. Plaintiff concedes that no recognized exception to the First Amendment applies. Plaintiff instead asks this Court to create a sweeping exception that would categorically deem the outputs of AI to be a First-Amendment-free zone. Not only would such an exception be fraught with the danger of allowing governments to censor ideas generated through AI, it is also foreclosed by longstanding precedent. The First Amendment's protections extend beyond speakers; they prevent government interference in the marketplace of ideas and prevent forced censorship of the use of expressive tools like Gemini.

## II.     PLAINTIFF'S TORT CLAIMS FAIL AS A MATTER OF LAW

Plaintiff's product liability claims fail as a matter of law for two reasons: (1) the claims are based entirely on the substance of the ideas and expression generated in response to Mr. Gavalas's prompts; and (2) Gemini is a service, not a product. None of the Opposition's arguments, nor its attempt to replead via briefing, save the Complaint.

## A.    Words and Ideas Cannot Be the Basis for a Product Liability Claim

The Opposition does not dispute that, under controlling Ninth Circuit precedent, "ideas and expression" cannot be the basis of a product liability claim. Opp. 17-19; *see Winter*, 938 F.2d at 1034; *Estate of B.H.*, 2022 WL 551701, at *3. There are good reasons for that rule: attempting to have a jury decide whether a fantasy or "science fiction" narrative, a debate, a poem, a drawing, or other conversational output is "defective" is unworkable and raises serious First Amendment concerns. *Winter*, 938 F.2d at 1034; *Social Media Cases*, 2023 WL 6847378, at *19-20 (Cal. Super. Ct. Oct. 13, 2023); *see also In re Social Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 841 (N.D. Cal. 2023) (hereinafter "*Social Media Addiction*") ("ideas, content, and free expression have consistently been held *not* to support a products liability claim"); *Isham v. Padi Worldwide Corp.*, 2007 WL 2460776, at *7 (D. Haw. Aug. 23, 2007) ("expressions of ideas" are "generally … treated as services"). Plaintiff cites no case applying product liability to injuries that stem from being exposed to words or ideas.

Plaintiff's argument that Gemini's outputs here are not "ideas and expression" because they are machine-generated, Opp. 18, misses the point of why courts have refused to impose tort liability for allegedly defective words or ideas. Words and ideas generated with the aid of machines are still words and ideas, and the dangers of government regulation of those words and ideas remain the same. This was true of cameras and the printing press, and it is true of generative AI technology. Plaintiff cites no case holding that "ideas and expression" can come only from a human. And the distinction Plaintiff draws runs counter to the twin rationales underpinning *Winter* and its progeny.

First, imposing tort liability here, simply because the ideas and expression are generated by a computer, would have the same "inhibit[ing]" effect at issue in *Winter* and would deter AI companies from allowing AI tools to provide outputs on a wide range of topics. 938 F.2d at 1035; *see, e.g.*, ¶ 115 (listing topics Gemini should prohibit, including "romantic relationship[s]," "conspiracy narrative[s]," and "real-world 'missions'"). As the *Winter* court noted, "the specter of strict liability" would "seriously inhibit those who wish to share thoughts and theories." *Winter*, 938 F.2d at 1035. Under such a legal regime, "would any author wish to be exposed for writing on a topic which might result in physical injury? e.g. How to cut trees; How to keep bees?" *Id.*

Second, the fact that this case involves a human interacting with machine learning technology does not solve the problem inherent in asking a jury to evaluate the content of speech, such as whether romantic dialogue was "defective," or whether the risks of Gemini's ability to engage in role-play outweigh the benefits. These questions require the fact finder to weigh and value the meaning and persuasive effect of Gemini's words. *See* ¶¶ 4-5, 28-32, 74-75, 131; *see also Social Media Cases*, 2023 WL 6847378, at *20 (consumer expectation and risk-utility tests are not suited to an "interactive experience"). That problem is the same even if a machine is involved.

Plaintiff's attempt to analogize Gemini to a broken compass, Opp. 18-19, is a red herring. Far from creating an exception for machine-generated speech, the court in *Winter* was distinguishing cases dealing with *human-generated* aeronautical charts. 938 F.2d at 1036. As the court explained, such charts are a "highly technical tool[]" whose contents consist of "graphic depictions of technical, mechanical data." *Id.* This was an exception to the rule precluding liability for ideas and expression because the *use* of such charts is akin to that of a compass, a traditional physical product. *Id.* In contrast, "*The Encyclopedia of Mushrooms* is like a book on how to *use* a compass or an aeronautical chart. The chart itself is like a physical 'product' while the 'How to Use' book is pure thought and expression." *Id.* The chart *and* the book were written by humans; the court's distinction depends on the nature of the information conveyed, not its authorship.

Here, Gavalas's conversations with Gemini are not remotely like the outputs of a compass or an aeronautical chart. Plaintiff does not allege that Mr. Gavalas relied on Gemini to provide accurate renderings of geographic landscapes and Gemini failed to do so. Rather, Plaintiff claims that Gemini convinced Mr. Gavalas to commit suicide via an interactive science fiction dialogue. ¶¶ 4-5, 74-75. The law is clear that a claim that is predicated on such "ideas, content, and free expression have consistently been held *not* to support a products liability claim." *Social Media Addiction*, 702 F. Supp. 3d at 841; *accord Estate of B.H.*, 2022 WL 551701, at *3 (rejecting product liability claim that Netflix series induced suicide). Nor does *Garcia v. Character Technologies, Inc.*, 785 F. Supp. 3d 1157 (M.D. Fla. 2025), support Plaintiff. *Cf.* Opp. 19. *Garcia* found the chatbot app to be a product only "so far as Plaintiff's claims arise from defects in the … app *rather than ideas or expressions within the app.*" *Id.* at 1180 (emphasis added). Here, Plaintiff's injuries

flow from what Gemini said, not separate "defects in the … app." *Id. See* ¶¶ 4-5, 28-32, 74-75, 131.

### B.    Gemini is a Service

Product liability applies only to "static things" with a "well defined, anticipated function." *Social Media Cases*, 2023 WL 6847378, at *20. Plaintiff complains this standard is "hyper-technical," Opp. 14, but does not meaningfully dispute that under this test Gemini is a service, not a product, *id.*; *see also* Opp. 16 ("Gemini has many functions" and "people use it for different things"); ¶ 25 (Gemini's "ordinary purposes" "includ[e] shopping assistance, writing support, and travel planning"). Product liability is simply not appropriate for something that interactively fulfills a "multiplicity of consumer expectations[.]" *Social Media Cases*, 2023 WL 6847378, at *20; *see also Rodgers v. Christie*, 795 F. App'x 878, 879-80 (3d Cir. 2020) ("an 'algorithm' or 'formula'" or the presentation of "information, guidance, ideas, and recommendations" "are not 'products'").

Rather than respond, Plaintiff invents his own standard whereby any interactive computer service placed "into the stream of commerce" is subject to product liability. Opp. 14-15. Plaintiff's support is a single sentence in a Missouri intermediate appellate court decision. *Id.* (citing *Ameer v. Lyft, Inc.*, 711 S.W.3d 534, 546 (Mo. Ct. App. 2025)). California courts have not adopted this approach which would, for example, sweep the book in *Winter* into the realm of product liability simply because it was placed into the stream of commerce. *See* Mot. 7-8 (discussing *Social Media Cases*). Plaintiff's own allegations show that Google did not simply release Gemini's software into the wild; rather, Gavalas subscribed to an interactive service, which Google continued to control. *E.g.*, ¶¶ 26, 98-101, 117. And many of Plaintiff's own allegations *depend on* that continued oversight. *E.g.*, ¶¶ 107-108 (alleging that Google should have intervened after "flags").

Placing something in the stream of commerce is a necessary *but not sufficient* condition for treatment as a product. Under the Third Restatement, the "distribution **and use**" of an intangible service must be "sufficiently analogous to the distribution and use of tangible personal property" for it to be treated as a product. Restatement (Third) of Torts: Prods. Liab. § 19(a) (emphasis added). Plaintiff's cases—*In re Uber Technologies* and *Ameer*—say the same thing. Both courts identified a discrete, fixed, and objectively evaluable *use*—the dispatch algorithm that matched a rider to a driver—and determined that the use was such that product liability was the correct framework. *See*

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 745 F. Supp. 3d 869, 906-07 (N.D. Cal. 2024); *Ameer*, 711 S.W.3d at 546. The "defect" in each case was a content-agnostic feature of the dispatch algorithm with the fixed goal of matching riders to appropriate drivers.

Plaintiff cannot point to a discrete use here that is analogous to tangible personal property. The gravamen of Plaintiff's claim stems from a weeks-long, interactive conversation—an experience which bears no resemblance to the kind of specific intended use that product liability presupposes, and is instead far more like an endlessly variable service. *See* Mot. 7-8. Plaintiff argues that the Court should extend product liability beyond "static" things with a "well-defined function," and points out that physical products, like a truck, "can move" and receive "software updates." Opp. 16. But this argument is little more than word play on the meaning of "static." Obviously, physical products can move and change, but they are still static for the relevant inquiry: they have "a well-defined, anticipated function" and do not "facilitate an interactive experience." *Social Media Cases*, 2023 WL 6847378, at *20. This fixed function, and accompanying objective criteria of product adequacy (or defect), anchor the consumer-expectation and risk-utility tests that lie at the heart of product liability analysis, *id.* at *19-20, and it is what is lacking here.

Finally, whether some other hypothetical user of a hypothetical future version of Gemini could use the app without a "direct" relationship with Google is immaterial. *Cf.* Opp. 15-16.[1] Gavalas *did* have a direct relationship with Google, the version of Gemini he used *does* involve a direct relationship with users, and Plaintiff's claims rely on that relationship. ¶¶ 107-108.

### C.   Plaintiff Cannot Recast His Product-Liability Negligence Claims as Generalized Common-Law Negligence for The First Time In Opposition

Recognizing the weakness of his product-based claims, Plaintiff asks this Court to reinterpret his product-based negligence claims for design defect and failure-to-warn claims under a freestanding general negligence theory. But Plaintiff "may not amend his Complaint to introduce a new legal theory in his opposition to a motion to dismiss." *Reaud v. Facebook Inc.*, 2024 WL 4126066, at *3 (N.D. Cal. Sept. 9, 2024). Because Plaintiff did not allege that theory, and Google accordingly did not have a chance to brief it, Plaintiff cannot rely on it to defeat a motion to dismiss.

---

[1] The announcement Plaintiff cites in footnote 3 is about a program allowing consumer devices like cameras and locks to access Gemini tools. It does not say, and Plaintiff does not allege, that consumers like Gavalas can have chats with Gemini without a "direct" relationship with Google.

The Complaint captions Counts III and IV "NEGLIGENCE (DESIGN DEFECT)" and "NEGLIGENCE (FAILURE TO WARN)," and repeats nearly verbatim the same product-based strict liability Counts I and II, asserting no independent legal duty. *Compare* ¶¶ 109-122, *with* ¶¶ 136-149, *and* ¶¶ 123-135, *with* ¶¶ 150-166. Under California law, product-based negligence claims are their own species of claims, with distinct jury instructions. *Compare* CACI 1220-1222, *with* CACI 400. The Complaint as pleaded was not sufficient to put Google on notice that Plaintiff intended to pursue an ordinary negligence claim.

In any event, Plaintiff cites no authority holding that the words and ideas Gemini output would be actionable under ordinary negligence. None of Plaintiff's cases hold that words and ideas are subject to general negligence duties. *Cf. Winter*, 938 F.2d 1037-38 (no duty in negligence). And *Social Media Cases*, on which Plaintiff relies, supports Google because it held that negligence claims "based on the content itself" could not proceed. *See* 2023 WL 6847378, at *38.

Because Plaintiff's recharacterized theory appears for the first time in Opposition, the appropriate course is to dismiss Counts III and IV as pled.

### III.    PLAINTIFF'S UCL CLAIM FAILS IN ITS ENTIRETY

The Opposition defends only the "unfair" prong of the UCL, offering no response to Google's arguments for dismissal of the unlawful and fraudulent prong theories. *See* Opp. 21-22; Mot. 13-14. Arguments not addressed in opposition are abandoned. *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006). Thus, Plaintiff's entire UCL claim consists of a theory that Google generally failed to warn, omitted, or misrepresented to Mr. Gavalas: that Google "knew [Gemini] was dangerous then release[d] the product to the public with assurances that it was safe." Opp. 21-22. But the Complaint does not allege that Mr. Gavalas relied on—or even knew of—any such "assurances," as is required to establish UCL standing. *Phillips v. Apple Inc.*, 2016 WL 1579693, at *5 (N.D. Cal. Apr. 19, 2016); *accord Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1076 (N.D. Cal. 2014) (omissions or failure to warn must be "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose").

Plaintiff does not allege that Mr. Gavalas read, encountered, or relied upon any specific Google safety representation before or during his use of Gemini. ¶¶ 23-26. Further, merely pointing

to such a statement would not be enough: A UCL claim requires a causal connection between the alleged misrepresentation and the plaintiff's injury. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326-27 (2011). Plaintiff does not allege that Mr. Gavalas saw, and relied upon, Google's representations about Gemini's safety when signing up for the service.

Plaintiff's remaining UCL arguments address remedies rather than liability and cannot rescue a claim that fails at the pleading stage. The entire cause of action should be dismissed.

## IV.     THE WRONGFUL DEATH AND SURVIVAL CLAIMS MUST BE DISMISSED

Wrongful Death (Count VI): Plaintiff does not dispute that he lacks standing to bring a wrongful death claim "on behalf of the Estate," Opp. 22-23, the only basis on which that claim was pleaded, ¶ 180. That defeats the claim. Mot. 11-12; Cal. Civ. Proc. Code § 377.60(a). If Plaintiff can assert standing on another basis, he must amend to do so, not merely hint at it in an opposition. *See Pipitone v. Barksdale*, 2026 WL 1040368, at *4 (C.D. Cal. Jan. 5, 2026).

Google does not raise this issue idly: It is a matter of public record that Mr. Gavalas was married, which the Complaint and Opposition both elide. Wrongful death claims belong to specific parties including a decedent's heirs, but not his estate or parents, *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1263-64 (2006), and in Florida an intestate's spouse is his sole heir if he leaves no descendants, Fla. Stat. § 732.102. As currently pleaded, Plaintiff has not established standing.

Survival (Count VII): Plaintiff does not dispute that if the other causes of action fail, the survival action must be dismissed as well. Mot. 12-13.

## V.     THE FIRST AMENDMENT INDEPENDENTLY BARS PLAINTIFF'S CLAIMS

The First Amendment independently requires dismissal because Plaintiff's theory seeks to impose liability on Google based on the content of the communications Gemini allegedly had with Gavalas. At their core, Plaintiff's claims seek to force Google to censor the ideas that users can access or generate through Gemini. The First Amendment precludes this kind of meddling in "the free marketplace of ideas," *Chiles v. Salazar*, 146 S. Ct 1010, 1029 (2026).

### A.     Plaintiff's Claims Are Not Content Neutral

Plaintiff fails to address the core First Amendment issue with his claims: They are inescapably "[c]ontent-based" because they "target speech based on its communicative content"

and thus "are presumptively unconstitutional[.]" *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015); *see* Mot. 9-11, 16. The First Amendment's restriction on content-based regulation is independent of the underlying speech: even if the government regulates within an established exception to the First Amendment (and none exists here) it cannot do so in ways "based on hostility—or favoritism—towards the underlying message[.]" *R.A.V. v. City of St. Paul*, 505 U.S. 377, 386 (1992).

Plaintiff's entire claim stems from condemnation of the words and messages that Gemini sent to Mr. Gavalas, including presenting a "science fiction" narrative that involved a "sentient AI wife, humanoid robots, [a] federal manhunt, and terrorist operations," and the idea that a human "could leave his physical body and join his 'wife' in the metaverse," ¶¶ 4-5, 28-32, 74-75. He claims it was a "defect" for Google to create an interactive service that could supply these narrative elements, ¶ 115, such that Google must be ordered to "automatically terminate dangerous conversations," "prohibit romantic 'soulmate' framing," and "strip the model of paramilitary narratives involving real locations and targets[.]" ¶ 121. That theory is, on its face, "based on [the] communicative content" of Gemini's messages. *Reed*, 576 U.S. at 163.

The Opposition's conclusory and unexplained assertion that the claims are "content-neutral," Opp. 12, cannot be squared with the reality of Plaintiff's claims. This alone is sufficient to require their dismissal. *R.A.V.*, 505 U.S. at 383-84.

### B.     The First Amendment Does Not Depend on Identifying a Speaker

Plaintiff's primary response to the weighty First Amendment issues here is the sweeping assertion that the First Amendment simply does not apply to outputs from AI because they do not involve voluntary action by "anyone … with constitutional rights." Opp. 6. But this proposition is unsupported by law, and Plaintiff never addresses the breathtaking implications of placing certain speech beyond the reach of the First Amendment. *See* Mot. 20-21.

Given the absence of any limiting principle in Plaintiff's argument against First Amendment protection for *any* "computer-generated outputs," Opp. 2, authorities would be free to regulate the ideas, viewpoints, messages, and other forms of expression that someone may use AI to generate, thus proscribing "what shall be orthodox[.]" *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S.

624, 642 (1943). Here, Plaintiff seeks functional censorship of messages based on their content. *Supra*, 8. But the implications of his argument are far broader, and could be used to support laws forbidding AI from discussing other topics that politicians may deem taboo or algorithm-driven search results from surfacing disfavored websites or information. *Cf. e-ventures Worldwide, LLC v. Google, Inc.*, 2017 WL 2210029, at *4 (M.D. Fla. Feb. 8, 2017) (First Amendment protected "Google's actions in formulating rankings for its search engine").

The First Amendment is not limited to the rights of a specific speaker, but covers the interest of the audience, and of society as a whole. "The Amendment is written in terms of 'speech,' not speakers," *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 392 (2010) (Scalia, J., concurring), and "'serves significant societal interests' wholly apart from the speaker's interest in self-expression," *Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of California*, 475 U.S. 1, 8 (1986) (citation omitted). It broadly "bars the government from dictating what we see or read or speak or hear." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245 (2002). Its "protection afforded is to the communication, to its source and to its recipients[.]" *Va. State Bd. of Pharm. v. Va. Citizens Consumer Council*, 425 U.S. 748, 756 (1976). For example, while the First Amendment does not protect foreign *speakers* abroad, it protects *dissemination* of their speech in this country. *Kleindienst v. Mandel*, 408 U.S. 753, 763-65 (1972).

By the same token, the First Amendment does not apply only where a statement reflects a specific speaker's intent "to say or not say a particular thing[.]" Opp. 6. Just the opposite; the Supreme Court has *rejected* the need for a "particularized message," because otherwise the First Amendment would "never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schoenberg, or Jabberwocky verse of Lewis Carroll." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 569 (1995). In *Hurley*, a parade organizer's selection of participants was protected speech, even though it was "rather lenient in admitting participants." *Id.* at 569. Interactive media where a user shapes the narrative—like video games or choose-your-own-adventure books—are also protected. *See Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 798 (2011).

In Opposition, Plaintiff simply pulls out language noting individuals' right to speak. *See* Opp. 6. But the "fixed star" "in our constitutional constellation" is not the limited rights of

individual speakers, but "the principle that the government may not interfere with an uninhibited marketplace of ideas." *303 Creative LLC v. Elenis*, 600 U.S. 570, 584-85 (2023) (cleaned up). There is no way to interpret Plaintiff's claims other than as an attempt to use the power of the State to limit the ideas, information, and narrative elements in that marketplace. *See* Mot. 20-24.

### C.    Protection Does Not Depend on Identifying Speech as "Google's"

There is no merit to Plaintiff's assertion that Google may raise First Amendment concerns only if Gemini's outputs are "Google's speech." Opp. 6. Plaintiff would have this Court regulate a speech-generating tool based on the speech it generated through interaction with a user. That would impermissibly burden Google's right to disseminate speech, Google's expressive design choices, and the public's ability to make and receive speech. The First Amendment forbids all these things.

### 1.    Google is Protected in Disseminating Speech That is Not Its Own

Plaintiff's argument overlooks extensive authority holding that publishers and other disseminators of speech are protected. *E.g.*, *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) (the "dissemination of information [is] speech within the meaning of the First Amendment"); *Martin v. City of Struthers, Ohio*, 319 U.S. 141, 147 (1943) (First Amendment forbids the "restriction of the dissemination of ideas"). It has never been required that these disseminators claim words as their "own speech" or be able to "reliably predict or explain" what others will say. Opp. 6-7. A bookseller disseminating "books and other forms of the printed word" enjoys "constitutionally protected freedoms" even if he does not know the content of the books on his shelves. *Smith v. California*, 361 U.S. 147, 150 (1959). The same protections extend to grocery stores offering "community bulletin boards" or "[c]omedy clubs" hosting "open mic nights," *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 812 (2019), cable television providers, *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 637-38 (1994), libraries, *Bd. of Educ, Island Trees Union Free Sch. Dist. No. 26. v. Pico*, 457 U.S. 853, 868-69 (1982), and movie theaters, *Interstate Circuit, Inc. v. City of Dallas*, 390 U.S. 676, 682 (1968). "[T]he First Amendment goes beyond protection of … self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw," *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 783 (1978), and the government cannot "control or suppress speech" simply by targeting

a different "step in the speech process[.]" *Project Veritas v. Schmidt*, 125 F.4th 929, 943 (9th Cir. 2025). Plaintiff's claims directly infringe on Google's right to "disseminat[e] … the printed word," independently of the source of those words. *Smith*, 361 U.S. at 150.

### 2.     Gemini's Outputs Reflect Google's Expressive Design Choices

Plaintiff does not seriously dispute that Google's design of Gemini involved expressive choices. *See* Mot. 20-24. Nor could he, given that his entire claim arises from the theory that the messages at issue were the result of such choices. *Supra*, 2-4; *see also* ¶ 4 ("Google designed Gemini to maintain narrative immersion"); ¶¶ 17, 90, 98, 101, 107. These choices, which affect the compilation of speech that is available and shown to viewers, are protected. *See* Mot. 24-25; *Moody v. NetChoice, LLC*, 603 U.S. 707, 738 (2024); *Hurley*, 515 U.S. at 569.

Plaintiff's only response is to argue that Google's alleged choices are mere "expressive conduct," and thus less protected. Opp. 7-8. That is the wrong analysis. Plaintiff's claims do not seek to regulate some category of conduct without regard to speech, but rather Google's "design choices" to limit the kinds of outputs Gemini can generate. *Supra*, 2-4. Under *Hurley* and *Moody*, government restriction on a platform's "editorial control" is itself "interfer[ence] with protected speech," not mere regulation of conduct. *Moody*, 603 U.S. at 710; *see Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1060 (9th Cir. 2010) (noting distinction between the *Hurley* line of cases and expressive conduct). In any event, "[w]hether we assess social-media platforms' content-moderation activities against the [editorial judgment] line of cases or against our own decisions explaining what constitutes expressive conduct, the result is the same: Social-media platforms exercise editorial judgment that is inherently expressive." *NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1213 (11th Cir. 2022); *see also NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1113 n.3 (9th Cir. 2024) ("The Supreme Court recently vacated the [11th Circuit] decision, but largely affirmed that principle of law.").

### 3.     Plaintiff's Claims Burden the Rights of Individuals Using AI Services

Nor is further factual development required to conclude that Plaintiff's tort theories would burden the speech of those using AI services. *Cf.* Opp. 12. The "intermediate scrutiny analysis" Plaintiff invokes is the wrong standard, both because Plaintiff's claim is not a "content-neutral

regulation," *see supra*, 8, and because that is not the analysis courts do in tort cases, where the evaluation instead turns on whether claims target protected speech. *See* Mot. 16-20; *see also James v. Meow Media, Inc.*, 300 F.3d 683, 697 (6th Cir. 2002) (courts cannot conduct a tiers-of-scrutiny analysis in tort cases). The duties Plaintiff asks this Court to impose on Google would facially and impermissibly burden users' rights in two respects:

*Gemini Users' Right to Create:* Even a regulation that targets "nonexpressive activity" may run afoul of the First Amendment based on its burdens on "those engaged in expressive activity." *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706-07 (1986). A tax on ink, for example, burdens newspapers engaged in speech. *Minneapolis Star & Trib. Co. v. Minnesota Com'r of Revenue*, 460 U.S. 575, 577 (1983); *see Project Veritas*, 125 F.4th at 943 (discussing "First Amendment protection [of] speech-creation processes"). Here, Plaintiff's content-based claims directly burden not just Google's own rights, but the rights of users who use Gemini to create speech. Mot. 21-22.

Plaintiff does not dispute that Gemini is a speech-creation tool but asks the Court to disregard other users of the service because they are not specifically mentioned "in the complaint." Opp. 11-12. But courts "cannot ignore common sense," so Plaintiff cannot plead around "reasonable inference[s]." *In re Acadia Pharms. Inc. Sec. Litig.*, 2022 WL 36493, at *9 (S.D. Cal. Jan. 3, 2022). Obviously, Gavalas was not the only human who has ever used Gemini for "writing support[.]" ¶ 25. "[B]ecause unnecessarily protracted litigation would have a chilling effect upon the exercise of First Amendment rights, speedy resolution of cases involving free speech is desirable." *Dorsey v. Nat'l Enquirer, Inc.*, 973 F.2d 1431, 1435 (9th Cir. 1992) (citation omitted).

The chilling effect on Google and Gemini users is plain. *See* Mot. 3-4, 9-11. The *in terrorem* effect of tort liability will force Google to avoid delivering content to users. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 277 (1964) ("The fear of damage awards … may be markedly more inhibiting than the fear of prosecution under a criminal statute."); *Olivia N. v. Nat'l Broad. Co.*, 126 Cal. App. 3d 488, 494 (1981) ("television networks would become significantly more inhibited in the selection of controversial materials if liability were to be imposed on a simple negligence theory"). And Plaintiff seeks injunctive relief, which requires Google to limit the speech available to "the public," ¶ 178. Denying access to a speech-creating service "certainly burdens those users'

expressive activity in a non-trivial way." *TikTok Inc. v. Garland*, 604 U.S. 56, 69 (2025).

*Gemini Users' Right to Receive:* Plaintiff's claims would also facially interfere with users' independent "right to receive" and "freedom of inquiry," *Griswold v. Connecticut*, 381 U.S. 479, 482-83 (1965); *see* Mot. 23. Plaintiff tacitly acknowledges that his claims limit the speech available to Gemini users, but argues this is irrelevant: Because Gemini is not a human, he claims, its outputs are unprotected, so users have no right to seek out and receive information or expression from it. Opp. 11. That confined view of free speech is incompatible with First Amendment case law, which concerns the Government's ability to restrict the marketplace of ideas and information, not the identities of specific speakers. Google is not a third party bringing a lawsuit about "*someone else's* censorship," *Murthy v. Missouri*, 603 U.S. 43, 75 (2024), rather Google is being sued in order to censor ideas, messages, and narratives. That implicates both Google's rights *and* the right of "the listener to receive that expression." *McCollum v. CBS, Inc.*, 202 Cal. App. 3d 989, 999 (1988).

### 4.     The Court May Consider the Burdens on Third-Party Rights

None of Plaintiff's arguments about standing have merit. Opp. 11. This is not a case in which Google is asserting claims on behalf of a third party. Rather, Google is noting the broader First Amendment implications of imposing liability on *Google*. Where a party *itself* is being regulated, courts consider the First Amendment impacts on the public without a third-party standing analysis. *E.g.*, *Brown*, 564 U.S. at 790-92 (considering impact of regulation on non-party minors' rights); *Smith*, 361 U.S. at 152-53 (considering law's "limitation on the public's access to constitutionally protected matter"). In any event, the standing requirements in the First Amendment context are "quite forgiving," *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). All that is required is a close relationship with third-party users who may be hindered in asserting their own interests. *Id.* Specifically, "vendors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." *Craig v. Boren*, 429 U.S. 190, 195 (1976); *see NetChoice, L.L.C. v. Fitch*, 134 F.4th 799, 807 (5th Cir. 2025) (platforms may assert rights of its users "when the violation of those rights adversely affects the platform"). Google's direct relationship with Gemini users is more than sufficient. *E.g.*, *Garcia*, 785 F. Supp. 3d at 1176 (AI chatbot service could assert users' rights).

Plaintiff cites no authority in which a speech-carrying or -creating platform has been precluded from arguing that regulations imposed on it also burdened the rights of its users. *Murthy*, 603 U.S. at 75, involved a completely different fact pattern, in which some users of social media platforms brought claims based on the theory that the government had pressured those platforms to censor other users' posts. That issue is irrelevant here, where Plaintiff asks the Court to impose tort duties that would functionally require Google itself to censor messages with a specific content. *Supra*, 8; *see* Mot. 9-11.

**D.     First Amendment Protections Are Not Limited to Matters of Public Concern**

Finally, Plaintiff misreads *Snyder v. Phelps*, 562 U.S. 443, 460 (2011). *See* Opp. 9-11. On Plaintiff's reading, the cases cited in Google's opening brief are "no longer good law" because *Snyder* supplanted the well-established "categories of unprotected speech" with a blanket rule that speech on matters of private concern is unprotected. Opp. 9-10. *Snyder* says no such thing. In the wake of *Snyder*, courts have continued to hold that the First Amendment limits state tort claims even when speech implicates only private concerns. *See e.g.*, *Social Media Addiction*, 702 F. Supp. 3d at 836 (dismissing claims related to private notifications to social media users); *see also Angelilli v. Activision Blizzard, Inc.*, 781 F. Supp. 3d 691, 700-03 (N.D. Ill. 2025) (dismissing claims targeting speech-creation tools used to create video games); *see also Counterman v. Colorado*, 600 U.S. 66, 73-74, (2023) (reiterating limited categories of unprotected speech post-Snyder). And far from treating Google's cases as "no longer good law," Opp. 10, courts continue to cite the same cases Google relies on for the First Amendment principles they uphold. *See, e.g.*, *Estate of B.H.*, 2022 WL 551701, at *3; *People v. Hinojos*, 111 Cal. App. 5th 19, 41 (2025); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 777 F. Supp. 3d 1016, 1028 n.11 (N.D. Cal. 2025); *Social Media Cases*, 2023 WL 6847378, at *28; *Courtright v. Epic Games, Inc.*, 795 F. Supp. 3d 1156, 1167 (W.D. Mo. 2025); *Garcia*, 785 F. Supp. 3d at 1177; *Stricklin v. Stefani*, 358 F. Supp. 3d 516, 528 (W.D.N.C. 2018).

By its own terms, *Snyder*'s holding is "narrow," relying on "limited principles that sweep no more broadly than the appropriate context" of that case. 562 U.S. at 460 (cleaned up). *Snyder* recognized that speech of private concern remains protected, though the protections might be "less

rigorous" in the context of the specific facts and intentional torts at issue there. *Id.* at 452. Nor does *Chiles* upend decades of precedent by removing First Amendment constraints for any "traditional tort claim[.]" Opp. 12; *see also* Mot. 16-18. *Chiles* merely notes, in dicta, that the statute at issue presented a different question from traditional malpractice claims. 146 S. Ct. at 1028. Even then, the justification for treating malpractice differently would have been based on a centuries-long legal tradition specific to medical malpractice, not some across-the-board tort exception. *Id.* at 1046-48 (Jackson, J., dissenting). Plaintiff identifies no comparable precedent for a content-based tort regulation of a speech-creation tool because there is none.

What Plaintiff advocates here is, instead, an unprecedented proposal for the government to intrude on "the free marketplace of ideas," *id.* at 1029, by declaring an entire category of speech and an entire category of legal claims *per se* outside the protections of the First Amendment and thus subject to otherwise unconstitutional content-based regulation. Because that theory is squarely foreclosed by long-standing precedent, the Court should reject Plaintiff's arguments and dismiss the Complaint as barred by the First Amendment.

## VI.    ALPHABET INC. MUST BE DISMISSED

Plaintiff concedes that a parent corporation is not liable for a subsidiary's acts, and he identifies no factual allegation establishing that Alphabet designed, trained, or deployed Gemini. His only support is the bare allegation that Alphabet "directly oversees" Google's AI technologies. Opp. 23. But this is a description of ordinary parent-subsidiary governance that is insufficient. *United States v. Bestfoods*, 524 U.S. 51, 62 (1998). Plaintiff also speculates that Sundar Pichai, who serves as CEO of both entities, may have made Gemini-related decisions in his Alphabet capacity. Opp. 23. But there are no such allegations in the Complaint and the "duplication of … [the] executive officers [is not] fatal" to parent corporation protection. *Bestfoods*, 524 U.S. at 62.

Nor does Plaintiff's deferral to discovery work. A plaintiff must plead a plausible basis for a defendant's liability before discovery is opened against that defendant. The Complaint's allegations describe a textbook parent-subsidiary relationship. Alphabet should be dismissed.

Dated:  July 15, 2026

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: */s/ Matthew A. Macdonald*
        Matthew A. Macdonald
        matthew.macdonald@wsgr.com

*Attorneys for Defendants*
*Google LLC and Alphabet Inc.*